[No. 5218–1.   Division One.   November 21, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. RALPH
ANTHONY TURNER, *Appellant.*

*Richard A. Hansen* of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *J. Kathleen Learned, Deputy,* for respondent.

WILLIAMS, J.—Ralph Anthony Turner was convicted of possessing heroin with intent to manufacture or deliver it. We affirm. In his appeal, Turner argues that a set of keys was improperly seized in violation of the Fourth Amendment, that certain evidence was erroneously considered at trial and that the proof of his constructive possession of narcotics was insufficient.

On May 21, 1976, acting on a tip from a reliable informant, Seattle police officers went to Turner's apartment, in

Seattle, where they executed a search warrant authorizing seizure of

heroin, controlled substances, related narcotics paraphernalia, records and documents relating to narcotics sales and dominion and control of the premises.

During the search of the apartment, the officers found narcotics paraphernalia and a set of keys. Initially, the keys were considered significant because they could probably be used to identify Turner's automobile, parked outside, and could be helpful in establishing his residency in the apartment. The keys were left on a counter top while the search continued. When no heroin was found, an officer telephoned the informant, who said that he had recently seen Turner "go to an additional stash of heroin" in a basement storage room of the building. The informant further said that admission to the storage room could be gained by a key "which should be on a key ring" and that in the room there should be a locker with a padlock, which one of the keys on the ring would fit.

The police then stationed a guard at the storage area and returned to a magistrate, who issued a warrant for the search of the "locker in the locker room" of the building, "to which Ralph Anthony Turner had the key in his apartment." The keys were listed in the inventory of items seized pursuant to the first warrant and described in the affidavit for the second warrant, which was executed. The keys fit, heroin was found in one of the lockers and was seized.

■ Turner first argues that the keys were illegally seized. Evidence not described in a warrant, and not constituting contraband or instrumentalities of crime, may be seized if it will aid in a particular apprehension or conviction, or it has a sufficient nexus with the crime under investigation. *Warden v. Hayden,* 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *Commonwealth v. Fields,* 319 N.E.2d 461 (Mass. App. 1974); *see also United States v. Jones,* 518 F.2d 384 (7th Cir. 1974), *cert. denied,* 423 U.S. 997 (1975). The nexus in this case was twofold: the keys not

only identified and opened the locker, but also circumstantially proved that their owner had dominion and control over the contents therein.

The crime under investigation was possession of heroin. As it was pursued, the trail led with increasing certainty to the cache of narcotics in the storage room locker. Officers investigating crime should not be required to obtain a warrant for each bit of evidence they uncover in the course of their work. The test is whether their actions are reasonable; U.S. Const. amend. 4; *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968); *State v. Williams*, 17 Wn. App. 186, 562 P.2d 651 (1977); in this case they certainly were.

Next, Turner argues that the heroin and the following statement, initialed by Turner and appearing at the bottom of an "Explanation of Rights" form which he signed, are inadmissible:

I have received 3 keys from the Seattle Police Department on 5–26–76. I acknowledge that these keys were taken from me during my arrest which occurred on May 21, 1976. The keys are my front door key (marked C 312, "it is unlawful to duplicate this key"); a car key marked ("1W87, for General Motors cars"); and a mailbox key marked ("R67"). The keys were not on my person but were in my apartment located at 2201 So. Main Street, #304. I agree to testify that the keys were taken and released to me as is said above.

Turner's only argument is that the heroin and the statement were fruits of an illegal seizure. The trial court, at the suppression hearing, found that Turner was not coerced into signing the advisement of rights form, but voluntarily did so to obtain the release of his keys, which were lawfully in the possession of the police. The trial court did not err in admitting the heroin and Turner's written statement.

■■ Finally, Turner asserts that there was insufficient evidence of his possession of the heroin found in the basement locker. The test for constructive possession is whether there is substantial evidence that the defendant had dominion and control over the drugs or over the premises

on which the drugs were found. *State v. Mathews,* 4 Wn. App. 653, 484 P.2d 942 (1971). Turner admitted that he lived in the apartment and that one of the keys on the ring was his front door key. There was evidence that every tenant in the building had two different front door keys, one of which fit the door to the storage room. On the same key ring as the front door key was a key that was demonstrated in court to fit the padlock to the locker containing the heroin. Possession of keys to a locked area is probative of constructive possession of items within that area. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Mantell,* 71 Wn.2d 768, 430 P.2d 980 (1967); *State v. Harris,* 14 Wn. App. 414, 542 P.2d 122 (1975). There was sufficient evidence to send the question of constructive possession to the jury.

Judgment affirmed.

JAMES and CALLOW, JJ., concur.

Reconsideration denied May 11, 1978.

Review by Supreme Court pending July 21, 1978.