FILED
COURT OF APPEALS
DIVISION II

2014 JUN 24 AM 9: 03

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43996-4-II |
| Respondent, | |
| v. | |
| WILLIAM B. SHOWERS, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — William B. Showers appeals his bench trial conviction for possession with intent to deliver heroin, possession of methamphetamine, and attempting to elude. He argues that (1) insufficient evidence supports his possession convictions; (2) the warrantless search of the backpacks found in his truck bed violated his rights under the Fourth Amendment[1] and article 1, section 7[2]; (3) admission of improper opinion testimony denied him his right to a fair trial; (4) defense counsel's failure to seek suppression of evidence and to object to improper opinion testimony constituted ineffective assistance; and (5) he (Showers) did not validly waive his state constitutional right to trial by jury. We affirm.

## FACTS

### I. CRIMES

On July 6, 2012, City of Raymond Police Officer Eric Fuller observed a pickup truck traveling with a defective windshield and without a front license plate; William B. Showers was

---

[1] U.S. CONST. amend. IV.

[2] WASH. CONST. art. I, § 7.

later identified as the driver. Fuller observed Showers exit the highway and turn into the town of Raymond. Following Showers, Fuller observed him drive through a stop sign before pulling up to a curb, where a female exited from the passenger side, put on a backpack and a baseball cap, and walked away at a fast pace, pulling the baseball cap down over her face. Showers quickly drove away from the curb.

Fuller followed and activated his emergency lights to stop Showers. But Showers accelerated to approximately 50 MPH in a 25 MPH zone, turned onto Highway 101 at a speed that caused the pickup to sway, and spun the pickup in a complete 360-degree turn in the middle of Highway 101 before coming to a stop, facing the opposite direction of traffic. Pacific County Sheriff's Deputy Jonathon Ashley observed the pickup's spinout and had to brake and to pull over to the highway shoulder to avoid hitting the pickup. As Fuller pulled up to the stopped pickup, Showers revved the pickup's engine and sped off past Fuller into the oncoming lane of traffic, heading back towards Raymond. Fuller followed Showers; Ashley joined the pursuit.

Off-duty City of Cosmopolis Police Deputy Chief Heath Laymen observed Showers and the officers enter and exit Highway 101. Sitting in his open Jeep outside a Raymond printing shop near the Highway 101 merge lane, Laymen observed Showers drive past the printing shop at an estimated 60 MPH in a 25 MPH zone and travel into oncoming traffic, causing at least one vehicle to brake to avoid a head-on collision with Showers. Laymen observed Fuller's fully marked police car attempting to stop the pickup with its activated sirens and lights; Laymen later identified the pickup's driver as Showers.

Showers sped through Raymond at an estimated 50-60 MPH in a 25 MPH zone, driving through at least two stop signs. Standing in a park next to the fire station, City of Raymond Fire

Department paramedic William Didion heard tires screeching, saw Showers drive through the park directly towards him, and ran out of Showers' path to avoid being struck.

Fuller followed Showers traveling down an alley at more than 20 MPH over the alleyway's safe speed limit toward a child sweeping rocks and garbage in front of an auto parts store. The child's father heard tires squeal, ran out into the alley to find Showers' pickup a foot away from his child, and immediately pulled his child out of Showers' path.

Fuller continued to follow Showers out of the alley onto Alder Street and proceeded to the intersection of Second and Blake Streets, hoping to intercept Showers but could not locate him. Fuller stopped at the intersection of Second and Alder Streets, looked to the left, and observed the pickup abandoned in the middle of the street, with the driver's door open. Officers approached the pickup to ensure it was unoccupied, took the keys from the ignition so it could not be driven, and then began searching for Showers. Citizens in the area pointed and directed the officers to a local establishment, where a sweaty, out-of-breath, shirtless Showers was hiding in the restroom. The officers took Showers into custody.

Showers' Community Corrections Officer (CCO), Linda Tolliver, was called to the scene, where she observed Showers in the back of a police vehicle and his pickup truck with its doors open. In her capacity as Showers' CCO, Tolliver searched the pickup, located several backpacks in the bed of the truck, and, with Fuller's assistance, searched the backpacks[3]; inside

---

[3] *See* RCW 9.94A.631(1): "If there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, a community corrections officer may require an offender to submit to a search and seizure of the offender's person, residence, automobile, or other personal property."

3

the backpacks they found heroin, two scales, several small plastic baggies, methamphetamine, a pipe and hypodermic needles.

## II. PROCEDURE

The State charged Showers with possession of heroin with intent to deliver, possession of methamphetamine, and attempting to elude a pursuing police vehicle. Showers waived his right to a jury trial and elected a bench trial. At a pretrial hearing, the trial court reviewed the written waiver that Showers had signed in consultation with his counsel, engaged in a colloquy with Showers about this waiver, and ruled that Showers understood his right to a jury trial and that his waiver of his right to a jury trial was knowing, intelligent, and voluntary.

At trial, three law enforcement officers testified that Showers had driven in a "reckless" manner as previously described. The trial court found Showers guilty of possession of heroin with intent to deliver, possession of methamphetamine, and attempting to elude a pursuing police vehicle. Showers appeals.

## ANALYSIS

### I. JURY TRIAL WAIVER

Showers contends that he did not validly waive his right to a jury trial. This argument fails.

Washington law requires that a defendant personally express a waiver of his or her jury trial right in order for the waiver to be valid. *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). But Washington law does not require the trial court to conduct an extensive on-the-record colloquy with the defendant before determining whether the defendant validly waived his jury trial right. *Pierce*, 134 Wn. App. at 771. "As a result, the right to a jury trial is easier to

4

waive than other constitutional rights." *State v. Benitez*, 175 Wn. App. 116, 129, 302 P.3d 877 (2013).

We review de novo the validity of a jury trial waiver. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). A defendant's waiver of his or her jury trial right must be made knowingly, intelligently, voluntarily, and without improper influences. *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994). A written jury trial waiver "is strong evidence that the defendant validly waived the jury trial right." *Pierce*, 134 Wn. App. at 771. "An attorney's representation that the defendant's waiver is knowing, intelligent, and voluntary is also relevant" to a determination of whether the defendant's jury trial waiver was valid. *Benitez*, 175 Wn. App. at 128 (citing *Pierce*, 134 Wn. App. at 771). Additionally, we consider whether the trial court informed the defendant of his or her jury trial right. *Pierce*, 134 Wn. App. at 771.

Showers argues that under article I, sections 21 and 22 of the Washington Constitution, "a valid waiver of the state constitutional right to a jury trial requires a thorough understanding of the right." Br. of Appellant at 32. He argues that because the record does not prove that he thoroughly understood the right and the practical and legal consequences of his waiver, his waiver was not knowing, intelligent, and voluntary. Showers also asks us to overrule our recently affirmed jury trial waiver opinions in *Benitez* and *Pierce*, both upholding jury trial waivers in similar circumstances.

Showers argues that the six *Gunwall*[4] factors establish that waiver of a jury trial under the state constitution requires a higher showing than waiver under the federal constitution. Showers recognizes that we recently rejected this same argument in *Pierce* and *Benitez*, but he argues

---

[4] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

these cases were wrongly decided and should be overturned. We rejected this argument in *Pierce* and *Benitez* because, in those cases, the defendants' reliance on *Gunwall* was misplaced. And we decline to revisit or to overrule those cases here.

Showers presented the trial court with a written waiver of his jury trial right. The trial court conducted a colloquy with him[5], ensuring that (1) he understood his right to a jury trial, (2) he had discussed the matter with his attorney so he understood what he was waiving, and (3) his request was voluntary. These procedures show that Showers personally expressed his desire to waive his jury trial right and that his waiver was knowing, intelligent, and voluntary. The record supports the trial court's ruling that Showers validly waived his right to a jury trial.

---

[5] The trial court questioned Showers to be sure he was knowingly, voluntarily, and intelligently waiving his right to a trial by jury:

> THE COURT: . . . Mr. Showers, I know Mr. Hatch reviewed this with you but I'm asking you at this time, the Waiver of Jury Trial means that you're giving up your constitutional right to have 12 people sit over there to your left and decide whether to acquit you or whether to find you guilty of the crime that the State has charged. You're giving up that right and if I find that you're doing this knowingly, intelligently, and voluntarily and I certify this, then in very plain, simple vernacular, you're stuck with me or whichever judge hears that case. It's a one-way street. I know you know this. I'm just making sure that is what your understanding is at this present time.
> [SHOWERS]: Yes, sir.
> THE COURT: Very well. And are you in agreement with the Waiver of Jury Trial?
> [SHOWERS]: I am.
> THE COURT: Did you sign it only after you reviewed it with your attorney so you were certain you knew what you were signing?
> [SHOWERS]: Yes, sir.
> THE COURT: Very well. Thank you. Did you sign of your own free will?
> [SHOWERS]: I did.
> THE COURT: Any threats or coercion?
> [SHOWERS]: No.
> THE COURT: Very well.

Verbatim Report of Proceedings (VRP) (Aug. 31, 2012) at 3-4.

## II. WARRANTLESS SEARCH

For the first time on appeal, Showers challenges the warrantless search of the backpacks under both the Fourth Amendment[6] and article 1, section 7,[7] arguing that the officers unlawfully searched his vehicle without a search warrant. At trial, however, Showers neither filed a motion to suppress nor challenged the lawfulness of the vehicle search and the seizure of evidence from the vehicle. Because Showers failed to raise these arguments below, there was no suppression hearing and no record developed on which we can review these first time challenges.

A party must raise an issue at trial to preserve it for appeal, unless the party can show the presence of a "'manifest error affecting a constitutional right'" under RAP 2.5(a)(3). *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). Issue preservation rules "encourage 'the efficient use of judicial resources' . . . by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (quoting *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

Courts employs a two-pronged analysis to determine whether a non-preserved error is a "manifest error affecting a constitutional right" under RAP 2.5(a). *See State v. Grimes*, 165 Wn. App. 172, 179-80, 267 P.3d 454 (2011). First, the court must determine whether an alleged error

---

[6] The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. U.S. CONST. amend IV.

[7] Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Article I, section 7 requires "no less" than the Fourth Amendment. *State v. Patton*, 167 Wn.2d 379, 394, 219 P.3d 651 (2009). A valid warrant, subject to a few jealously guarded exceptions, establishes the requisite "'authority of law.'" *State v. Afana*, 169 Wn.2d 169, 176-77, 233 P.3d 879 (2010) (quoting WASH. CONST. art. I, § 7).

is truly constitutional; second, the court must determine whether the alleged error is "manifest." *Grimes*, 165 Wn. App. at 180. Showers' challenge to the legality of the search and seizure of the drug evidence from his pickup is constitutional in nature. Thus, we turn to the manifest error prong of the test.

A constitutional error is "manifest" if it caused actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009); *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). To demonstrate actual prejudice, the appellant must plausibly show that the asserted error had practical and identifiable consequences at trial. *O'Hara*, 167 Wn.2d at 99. Because Showers fails to show such consequences, he fails to show that alleged constitutional error is manifest. *O'Hara*, 167 Wn.2d at 99; *McFarland*, 127 Wn.2d at 333. Holding that Showers cannot argue for the first time on appeal that the search and seizure of evidence were illegal, we do not further address this issue.[8] RAP 2.5(a).

### III. SUFFICIENT EVIDENCE

Showers contends that sufficient evidence does not support his convictions for drug possession because (1) the State failed to demonstrate that he had dominion and control over the drugs; and (2) the trial court's findings of fact were insufficient to support the legal conclusion that he had possessed the drugs. We disagree.

### A. Standard of Review

Evidence is sufficient to support a conviction if, "after viewing the evidence and all reasonable inferences from it in the light most favorable to the State, a rational trier of fact could

---

[8] Were we to address this claim, Showers' argument would fail because the search was pre-authorized as a condition of Showers' community custody and did not require a search warrant.

find each element of the crime proven beyond a reasonable doubt." *State v. Homan*, 172 Wn. App. 488, 490-91, 290 P.3d 1041 (2012) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)), *review granted*, 177 Wn.2d 1022 (2013). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Circumstantial evidence and direct evidence are equally reliable." *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132 (2005) (citing *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)). We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874–75, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

Where, as here, the defendant is tried by a court sitting without a jury, our review is limited to determining whether substantial evidence supports the trial court's findings of fact and whether these findings support its conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). We consider unchallenged findings of fact as verities on appeal. *Id*. We review conclusions of law de novo. *Id*.

### B. Analysis

### 1. Constructive possession

Showers contends that the State failed to demonstrate that he had dominion and control over the drugs. The State counters that as the driver and sole occupant of the pickup, Showers constructively possessed the drugs found in the backpacks in the pickup's bed. We agree with the State.

To establish Showers' guilt, the State had to prove beyond a reasonable doubt that he possessed a controlled substance. RCW 69.50.4013(1).[9] Possession can be actual or constructive. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). A person has actual possession when he or she has physical custody of the item and constructive possession when he or she has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Whether a person had dominion and control over an item depends on the totality of the circumstances. *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995).

A person's dominion and control over a premises allows the trier of fact to infer that the person also has dominion and control over items in the premises. *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996). For dominion and control purposes, an automobile is considered "premises." *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). Dominion and control of premises can be shared; it need not be exclusive to establish constructive possession of controlled substances found thereon. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004). And "[p]ossession of keys to a locked area is probative of constructive possession of items within that area." *State v. Turner*, 18 Wn. App. 727, 731, 571 P.2d 955 (1977).

Viewed in a light most favorable to the State, the totality of the circumstances here show that the trial court could have reasonably inferred that Showers exercised dominion and control over the pickup and the controlled substances it contained. Showers was the pickup's driver and

---

[9] The legislature amended RCW 69.50.4013 in 2013. LAWS OF 2013, ch. 3 § 20. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

lone occupant at the time of the stop. He used the vehicle to the exclusion of others after the vehicle's earlier occupant left the pickup, taking with her another backpack. Showers' skill in maneuvering the pickup while speeding through alleys and residential streets to elude the officers showed that he handled the pickup with familiarity. That Showers eventually abandoned the pickup, with the key in the ignition, and fled on foot are indicia of guilt. *See State v. Brunton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965) ("[F]light is an instinctive or impulsive reaction to a consciousness of guilt or is a deliberate attempt to avoid arrest and prosecution."); *State v. Porter*, 58 Wn. App. 57, 58-59, 62, 791 P.2d 905 (1990) (proximity to illegal drugs, together with other corroborative evidence tending to show guilt, is sufficient to establish the dominion and control over the drugs necessary to constitute constructive possession). Citizens' pointing the officers in the direction of Showers' flight was also circumstantial evidence of his dominion and control over the pickup. This evidence and related inferences support the trial court's finding that Showers had dominion and control over the vehicle and thus, constructively possessed the controlled substances found in the backpacks in the truck.[10]

2. Dominion and control over vehicle; constructive possession of drugs

Relying on a Division Three case, *State v. Shumaker*, 142 Wn. App. 330, 174 P.3d 1214 (2007), Showers argues that evidence of his dominion and control over the premises is insufficient to establish that he had dominion and control of the controlled substances on the premises. Showers' reliance on *Shumaker* is misplaced because the holding focused on the trial

---

[10] Accordingly, we need not address the State's argument that Showers' possession of the truck's keys established his constructive possession of the truck. *See State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010).

court's erroneous jury instructions. Here, in contrast, Showers does not contend that a jury was improperly instructed.

Rather, he argues that the trial court erred in concluding that dominion and control over the vehicle was sufficient to establish his constructive possession of its contents. Division One of this court, however, has noted the distinction between instructional error and claims of insufficient evidence in the constructive possession context:

> When the sufficiency of the evidence is challenged on the basis that the State has only shown dominion and control only over premises, and not over drugs, courts correctly say that the evidence is sufficient because *dominion and control over premises raises a rebuttable inference of dominion and control over the drugs.*

*Cantabrana*, 83 Wn. App. at 208 (emphasis added), which we cited with approval in *State v. Turner*, 103 Wn. App. at 523.[11]

Here, the trial court could presume Showers' constructive dominion and control over the drugs in the backpack from his sole dominion and control over the pickup in which the backpack was found. Viewing the facts in favor of the State, especially the inference of guilt from Showers' frantic flight in his speeding vehicle and on foot, a rational trier of fact could find beyond a reasonable doubt that Showers constructively possessed the drugs.

---

[11] In *Turner*, we adopted Division One's reasoning in *Cantabrana*, but held that when this reasoning is applied to unlawful firearm possession, under *Anderson*, knowledge is required. *Turner*, 103 Wn. App. at 524 (citing *State v. Anderson*, 141 Wn.2d 357, 357, 5 P.3d 1247 (2000)). In *Anderson*, the Washington Supreme Court rejected the assertion that unlawful possession of a firearm is a strict liability defense and held that knowledge of the possession or presence of a firearm is an element of the crime. *Anderson*, 141 Wn.2d at 359. *See also State v. Chouinard*, 169 Wn. App. 895, 900-02, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013), in which we differentiated between constructive possession by the vehicle owner and by the passenger, citing the same rule as above, but not applying it because passenger Chouinard was in mere proximity to the gun, *not* in dominion and control of the gun.

### 3. Actual possession not required

Showers further contends that the trial court failed to find that he could have reduced the controlled substances to actual possession, apparently based on our decision in *State v. Chouinard*, 169 Wn. App. 895, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013), which he believes stands for the proposition that, to establish possession, a trial court must find that a defendant could have reduced the controlled substances to actual possession. Showers is incorrect.

First, *Chouinard*, in which we focused on a passenger charged with possession of a firearm, does not stand for the proposition that a defendant must be able to reduce a controlled substance to actual possession. Second, in *Chouinard*, we determined that a backseat passenger's mere proximity to a weapon in the trunk of a vehicle not owned by the passenger, and his knowledge of the weapon's presence, were insufficient to establish dominion and control and that this evidence alone could not sustain a conviction for constructive possession of a firearm by the passenger. *Chouinard*, 169 Wn. App. at 903.

Nevertheless, we distinguished between vehicle drivers/owners and vehicle passengers, noting that (1) courts have found "sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was either the owner of the premises or the driver/owner of the vehicle where the contraband was found,"[12] but (2) courts "hesitate to find sufficient evidence of dominion or control where the State charges passengers with constructive

---

[12] *See Bowen*, 157 Wn. App. at 828; *Turner*, 103 Wn. App. at 521; *State v. McFarland*, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), *aff'd*, 127 Wn.2d 322, 899 P.2d 1251 (1995); *State v. Reid*, 40 Wn. App. 319, 326, 698 P.2d 588 (1985); *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997).

No. 43996-4-II

possession."[13]  *Chouinard*, 169 Wn. App. at 899-900.  Here, in contrast with passenger Chouinard, Showers drove the vehicle:  He was never a backseat passenger.  And after his earlier passenger exited the pickup with a backpack, he was in sole control of the pickup and its remaining contents.  Here, constructive possession of the drugs was sufficient to support Showers' conviction; it was not necessary for the State to prove actual possession or the ability to reduce the drugs to his immediate dominion and control.

C. Findings of Fact Support Conclusions of Law about Controlled Substances Possession

Showers further contends that in finding that he possessed the drugs, the trial court relied on facts not relevant to establishing dominion and control, such as "'the circumstances of the elude . . ., flight from the vehicle, [and manner] in which the vehicle was controlled.'"  Br. of Appellant at 14 (some alterations in original) (quoting Clerk's Papers (CP) at 8 (Findings of Fact (FF) 20)).  Showers mischaracterizes the trial court's findings; he also fails to articulate the "relevant facts" on which the trial court should have relied in finding dominion and control.

The trial court found:

Given the totality of the circumstances of the elude, flight from the vehicle, [manner] in which the vehicle was controlled, the fact that Mr. Showers was the lone occupant, and that Mr. Showers utilized the vehicle to the exclusion of others demonstrates to this Court that Mr. Showers had dominion and control over this vehicle.  Mr. Showers had sufficient dominion and control over the vehicle to be in possession of the contents therein including the controlled substances found therein.

CP at 8 (FF 20).  As we have previously noted, whether a person has dominion and control over an item depends on the totality of the circumstances.  *Jeffrey*, 77 Wn. App. at 227.  Here, the trial court properly considered the totality of the circumstances in concluding that Showers had

---

[13] *See George*, 146 Wn. App. at 923; *Cote*, 123 Wn. App. at 546.

14

dominion and control over the pickup, including the drugs found in the backpack in the pickup. Accordingly, we hold that there was sufficient evidence to support Showers' possession convictions.

### IV. OPINION TESTIMONY

Showers next argues that the trial court erred by admitting improper opinion testimony from three law enforcement witnesses, Officer Fuller, Officer Layman, and Deputy Ashley, whom he claims impermissibly testified about their opinions of his guilt. Showers failed to preserve this issue for appeal when he did not object at trial[14] to any of this purportedly improper opinion testimony. Generally, parties may not claim errors for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

As we have previously explained, appellants may raise a claim for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a). But "[a]dmission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error." *Kirkman*, 159 Wn.2d at 936. To merit appellate review in these circumstances, a defendant must show that the alleged error caused "actual prejudice" or "'practical and identifiable consequences'" at his trial. *Kirkman*, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). Here, Showers has not shown that the admission of this challenged testimony caused actual prejudice at trial. Therefore, we do not further consider this argument.

---

[14] Showers did object to Fuller's testimony about whether he thought the child in the alley was in danger when Showers sped by in his pickup truck, which objection the trial court overruled. But this testimony is not what Showers now challenges on appeal. Instead, he challenges Fuller's, Layman's, and Ashley's characterizing his (Showers') driving as "reckless," which Showers now claims for the first time on appeal were improper opinions of guilt. Br. of Appellant at 21.

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Showers argues that his trial counsel rendered ineffective assistance by (1) failing to move to suppress the drugs, and (2) failing to object to improper opinion testimony. These arguments also fail.

We review ineffective assistance of counsel claims de novo. *State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006). To prevail on an ineffective assistance of counsel claim, Showers must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). If Showers fails to establish either prong of this test, our inquiry ends and we need not consider the other prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

### A. Failure To Move To Suppress Drugs

Failure to bring a motion to suppress is not per se deficient performance. *McFarland*, 127 Wn.2d at 322. Counsel can legitimately decline to seek suppression if there is no viable ground for such a motion. *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). Thus, to base an ineffective assistance claim on counsel's failure to move to suppress evidence, the defendant must show that the trial court would likely have granted such a motion. *McFarland*, 127 Wn.2d at 333-34. Showers fails to make such a showing.

At the time of his arrest, Showers was in community custody, which allowed his CCO to search his person, residence, automobile, or personal property if there was reason to believe that

16

he had violated a condition of supervision.[15] *See* RCW 9.94A.631(1). Here, in fleeing from law enforcement in a speeding truck, Showers was in the process of committing a felony, a violation of his community custody. He also had an outstanding Department of Corrections' arrest warrant for another violation. The pickup Showers was driving had been in his exclusive control

---

[15] Although Showers does not address this point in the context of his ineffective assistance of counsel argument, in his warrantless search argument, he contends that his community custody status did not justify the search and seizure at issue in this appeal. He argues that (1) under *State v. Winterstein*, 167 Wn.2d 620, 220 P.3d 1226 (2009), a CCO must have probable cause to believe that the premises to be searched are actually connected to the supervisee; (2) here, his CCO lacked probable cause to believe that the backpacks belonged to him; and (3) thus, his CCO's search of the backpacks was unauthorized. This argument fails.

First, the *Winterstein* holding does not apply here because it addresses only a supervisee's residence, not a vehicle. Second, even if *Winterstein* applied here, there was probable cause to search the backpacks in the pickup: The record shows that the officers had probable cause to believe that Showers had committed a violation of his community custody release by committing a felony (attempting to elude) and that he was in exclusive control of the vehicle searched until he fled from it. As we explained earlier, Showers' possession of the pickup gave the CCO probable cause to believe the backpacks in the pickup's bed were also in Showers' possession.

Showers further contends that his community custody status did not justify his CCO's search of the backpacks because there was no nexus between them and his suspected violation of his community custody conditions. In so arguing, Showers appears to concede that his CCO had reasonable cause to believe that he had violated these conditions by attempting to elude a police officer or by driving recklessly; instead, he argues that his CCO could not have expected to find evidence of violations in the backpacks. But Showers provides no authority for the proposition that there must be a nexus between the suspected community custody violation and the premises searched.

Furthermore, the law is to the contrary: A community custody search need not be particularized or limited by scope. *State v. Parris*, 163 Wn. App. 110, 122, 259 P.3d 331 (2011) (alteration in original) (quoting *United States v. Conway*, 122 F.3d 841, 843 (9th Cir. 1997) ("'Because [the CCO] had reasonable grounds to suspect that Conway had violated the terms of his release, the search was valid under Washington law. It does not matter whether the community corrections officers believed they would find evidence of Conway's address or contraband when they opened the shoeboxes. Washington law does not require that the search be necessary to confirm the suspicion of impermissible activity, or that it cease once the suspicion has been confirmed.'")). Accordingly, Showers' community custody status, and the CCO's probable cause to believe that Showers had committed a felony and that he was in possession of the pickup, provided Showers' CCO with authority to search the pickup and the backpacks in the pickup's bed.

before he fled from it, which was subject to search by his CCO under RCW 9.94A.631(1). Thus, Showers' trial counsel may have legitimately chosen not to move to suppress the evidence seized from the pickup because the search was pre-authorized and legal as a condition of Showers' community custody. Thus, to the extent that Showers bases his ineffective assistance claim on of counsel's failure to move to suppress evidence, this claim fails.

## B. Failure To Object

Given the deference we afford defense counsel's decisions in the course of representation, the threshold for deficient performance is high. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *remanded*, 168 Wn. App. 635, 278 P.3d 225 (2012). There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions by exercising reasonable professional judgment. *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991). To show ineffective assistance by failing to object, Showers must show (1) absence of legitimate strategic or tactical reasons for failing to object; (2) that the objection would likely have been sustained if raised; and (3) that the result of the trial would have been different if the evidence had not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1995). This Showers fails to do.

As a threshold matter, the law enforcement officers' testimony was not improper opinion testimony about Showers' guilt; rather it was their eyewitness account about the "reckless" manner in which they had seen Showers driving—high speeds, through narrow alleys, through a stop sign, against the flow of oncoming traffic, spinning 360 degrees in the roadway, coming dangerously close to a child playing at the street's edge, through a park, and nearly colliding head-on with another vehicle. We agree with the trial court that this testimony was admissible.

18

No. 43996-4-II

Thus, we hold that Showers fails to show the deficient performance prong of the ineffective assistance of counsel test.

But even if this testimony was improper opinion testimony, its admission was harmless. Overwhelming eyewitness testimony about Showers' erratic driving would lead any reasonable person to conclude that Showers was driving recklessly. Thus, Showers cannot show how the officers' characterizing his driving as "reckless" had any significant effect on the jury's verdict. We hold, therefore, that he fails to show ineffective assistance of counsel when he failed to object to the officers' testimony that his driving was reckless.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Hunt, J.

We concur:

_____
Bjorgen, A.C.J.

_____
Lee, J.

19