# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　v.<br><br>RANCE MICHEL POINTEC<br><br>　　　　　Appellant. | No.  50345-0-II<br><br>UNPUBLISHED OPINION |

SUTTON, J. — Rance M. Pointec appeals his convictions for two counts of unlawful possession of a firearm.[1]  Pointec argues that his right to a unanimous jury verdict was violated because the State failed to elect which alleged act of possession supported each charge and the jury did not receive a unanimity instruction.  We disagree and affirm Pointec's convictions.

In a supplemental brief, Pointec argues that certain legal financial obligations (LFOs) in his judgment and sentence should be stricken pursuant to Engrossed Second Substitute House Bill (ESSHB) 1783.[2]  The State concedes this issue and we accept the State's concession.  Consequently, we affirm Pointec's convictions but remand to the trial court to amend the judgment and sentence by striking the criminal filing fee, deoxyribonucleic acid (DNA) collection fee, and the interest accrual provision on nonrestitution LFOs.

---

[1] Pointec was also convicted of promoting prostitution, but he does not appeal that conviction.

[2] 65th Leg., Reg. Sess. (Wash. 2017).

FACTS

On August 14, 2015, police responded to an apartment complex after being notified of an unresponsive, injured woman in a car. The injured woman later identified her assailants as Pointec and Nikita Allen. The police subsequently obtained a search warrant for Pointec's and Allen's apartment. The police executed the search warrant on the apartment on September 28, 2015, after obtaining keys to the apartment from Pointec during a traffic stop.

Police found a 9 mm handgun lying on the bed in the apartment and an AR-15 rifle in a gun case between the mattress and footboard of the bed. Police also found a receipt from Surplus Ammo and Arms showing the sale of the 9 mm handgun to Allen on September 25, 2015. Detective Kenneth Lewis went to the store and viewed video surveillance from the date on the receipt. The surveillance video showed Pointec and Allen selecting the 9 mm gun, selecting ammunition, and purchasing the gun. Detective Lewis also saw himself in the surveillance video while he was off duty.

The State charged Pointec with two counts of first degree unlawful possession of a firearm, two counts of second degree human trafficking, and one count of second degree promoting prostitution. Pointec stipulated that he had previously been convicted of a felony defined as a "serious offense" and that during the period from May 14, 2015, through September 28, 2015, he was not permitted by law to possess a firearm. Clerk's Papers (CP) and 34. The charging information identified the two counts of first degree unlawful possession of a firearm as occurring "on or about the period between May 14th, 2015 through September 28th, 2015." CP at 36.

At trial, the court admitted the surveillance video, as well as still images from the video, showing Pointec and Allen purchasing the 9 mm handgun. The photos and video show Pointec

handling the handgun, selecting ammunition for the gun, handing Allen money to purchase the handgun, and chatting with Detective Lewis who happened to be present at the store at the same time.[3] The video also shows Pointec handling the gun for over 25 minutes while discussing the gun with store employees. At one point on the video Allen appears wholly disengaged in the gun purchase, using her phone while standing away from the counter where Pointec remained handling the gun and chatting with an employee.

The trial court also admitted still images from a Snapchat video found on Pointec's phone that showed him firing an AR-15 rifle. In addition to the still images, the court admitted a video of Pointec firing the AR-15. The court also admitted a log of messages dated August 5, 2015, between Pointec and the man who allegedly sold him the AR-15 rifle. The messages detailed the price of the rifle and complaints that Pointec had about it malfunctioning after he purchased it.

The State introduced evidence showing that Pointec lived with Allen in the apartment where the guns were found. The State also introduced a series of text messages wherein Pointec refers to the apartment as his home and discusses living there.

Regarding both firearm charges, the trial court instructed the jury as follows:

> A person commits the crime of unlawful possession of a firearm in the first degree when he has previously been convicted of a serious offense and knowingly owns or has in his possession or control any firearm.

CP at 73.

---

[3] Detective Lewis testified that on September 25, 2015, while off duty, he had gone to Surplus Ammo and Arms to purchase ammunition storage cans. Detective Lewis also testified that while at the store, he briefly interacted with Pointec by commenting on the 9 mm handgun, "It's a great pistol. I own one. You guys will like it." 6 Verbatim Report of Proceedings at 768.

Possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.

Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

CP at 74.

For count III—the first unlawful possession of a firearm charge—the court instructed the jury to find Pointec guilty if each of the following elements of the crime were proved beyond a reasonable doubt:

(1) That on or about the period between the 14th day of May, 2015 and the 28th day of September, 2015, the defendant knowingly had a firearm, to wit: a 9 mm handgun, in his possession or control;

(2) That the defendant had previously been convicted of a serious offense; and

(3) That the possession or control of the firearm occurred in the State of Washington.

CP at 76. The instruction for count IV—the second unlawful possession of a firearm charge—was identical to the instruction for count III except that it identified the firearm as "an AR-15 rifle." CP at 77.

In closing argument, the State argued the firearm charges as follows:

Understanding the common-sense viewpoint with the gun charges, the evidence is extremely clear. We have these stills of the video surveillance from this Surplus Ammo showing the defendant and Nikita. They are purchasing a 9[]mm. You have the detective who was standing right beside them. You have in the video the defendant racking the 9[]mm, looking at it. That's an operable weapon.

He's stipulated he's been convicted of a serious offense, a felony offense defined as a serious offense, and he can't possess a firearm in any means and for any purpose. So he's guilty in the store of possessing an operable firearm there.

But they bought it. Nikita bought it that day, took it back to the apartment where they both reside. And any argument that he doesn't reside there, you'll see in these text messages, that's just completely not credible.

Then you have the AR-15. You have the [Snapchat] video showing the defendant firing the AR-15 that was then found during the service of the search warrant.

So the firearm charge, both counts, are not difficult to prove, and the evidence supports them beyond a reasonable doubt. The defendant's guilty of possessing those weapons.

7 Verbatim Report of Proceedings (VRP) at 961-62.

The jury found Pointec not guilty of second degree human trafficking but found him guilty of second degree promoting prostitution and both counts of first degree unlawful possession of a firearm. Pointec appeals.

ANALYSIS

Pointec argues that his right to a unanimous jury verdict was violated because the State failed to elect which alleged act of possession supported each firearm charge and the jury did not receive a unanimity instruction. He contends that the State alleged both actual and constructive possession for both charges and the jury had to unanimously accept either the State's theory of actual possession or its theory of constructive possession. We disagree.

For a conviction to be constitutionally valid, a unanimous jury must conclude that the accused committed the criminal act charged. *State v. Beasley*, 126 Wn. App. 670, 682, 109 P.3d 849 (2005). When multiple incidents are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on which incident constitutes the crime. *Beasley*, 126 Wn. App. at 682. Under these circumstances, unless the State elects which incident it will rely on for the conviction, a trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Beasley*, 126 Wn. App. at 682.

We review de novo whether a unanimity instruction is required. *See State v. Boyd*, 137 Wn. App. 910, 922, 155 P.3d 188 (2007). "A constitutional error occurs if the State fails to properly elect the criminal act and the trial court fails to instruct the jury on unanimity." *Beasley*, 126 Wn. App. at 682. Because the failure to give a unanimity instruction is an error of constitutional magnitude, a defendant may raise the issue for the first time on appeal. *State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013). However, any error is harmless if no rational juror could have a reasonable doubt that each alleged incident established the crime beyond a reasonable doubt. *Beasley*, 126 Wn. App. at 682-83.

To convict Pointec for two charges of unlawful possession of a firearm, the jury had to find beyond a reasonable doubt that between May 14, 2015 and September 28, 2015, Pointec knowingly had a 9 mm handgun and an AR-15 rifle in his possession or control and was previously convicted of a felony offense. RCW 9.41.040(1)(a); CP at 76-77.

Possession of a firearm may be actual or constructive. *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). Actual possession occurs when the firearm is in the actual physical custody of the person charged. *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013). Constructive possession occurs when the person charged does not have physical possession of the firearm but instead has dominion and control over the firearm. *Manion*, 173 Wn. App. at 634.

## I. 9 MM HANDGUN: HARMLESS ERROR

Assuming without deciding that the trial court erred by not giving a unanimity instruction for the charge involving the 9 mm handgun, we hold that any error was harmless. Based on the evidence admitted at trial, no rational trier of fact could have had a reasonable doubt as to whether Pointec had actual possession of the 9 mm handgun at the gun store as seen in the surveillance video and photographs, or that he had constructive possession of the handgun in the apartment where he resided and where the handgun was found.

The evidence at trial showed Pointec extensively handling the handgun in the gun store with Allen. The photographs and video showed Pointec selecting the handgun, holding it for over 25 minutes, discussing the handgun with store employees and Detective Lewis, selecting ammunition for it, and giving the handgun and money to pay for it to Allen. Given the extent to which Pointec handled the handgun at the gun store, no rational juror could have had reasonable doubt that Pointec actually possessed the 9 mm handgun while at the gun store.

The State also provided sufficient evidence to prove beyond a reasonable doubt that Pointec constructively possessed the handgun in the apartment that Pointec and Allen shared. A defendant has constructive possession of an item when the defendant has dominion and control over the item or the premises where the item is located. *State v. Turner*, 103 Wn. App. 515, 524, 13 P.3d 234 (2000). Dominion and control of a premises can be shared. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004).

Pointec's dominion and control of the apartment is demonstrated by the fact that he had possession of keys to the apartment. *See State v. Turner*, 18 Wn. App. 727, 731, 571 P.2d 955 (1977) ("Possession of keys to a locked area is probative of constructive possession of items within that area."). Further, the State introduced evidence of multiple conversations between Pointec and others wherein he referred to the apartment as his apartment or his home and wherein he provided the address of the apartment as his address. Based on the evidence at trial, no rational juror could have had a reasonable doubt that Pointec had constructive possession of the 9 mm handgun in the apartment over which he had dominion and control.

Consequently, any error in omitting a unanimity instruction as to the 9 mm handgun was harmless.

## II. AR-15 RIFLE: ELECTION

As to the charge involving the AR-15 rifle, the State argues that it properly elected the possessory act upon which it charged Pointec with unlawful possession of the AR-15. We agree.

Courts consider several factors when determining whether the State elected a specific act, including the charging document, evidence, instructions, and closing argument. *State v. Kier*, 164 Wn.2d 798, 813, 194 P.3d 212 (2008). A prosecutor's statement in closing argument alone is

insufficient to make a "clear election" when the evidence and jury instructions indicate that multiple acts constitute the crime charged. *Kier*, 164 Wn.2d at 813-14 (holding no "clear election" was made in prosecutor's closing argument when the evidence suggested multiple acts could have constituted the charged crime and the jury instructions did not specify the underlying criminal act).

Here, the evidence and opening statements and closing arguments, taken together, show that the State made a clear election as to the basis of its charge for the AR-15 rifle. The primary evidence supporting the firearm charge involving the AR-15 rifle was the Snapchat video from August 26, 2015, showing Pointec firing the rifle. During opening statements, the State only mentioned the Snapchat video of Pointec shooting the AR-15 rifle as the forthcoming evidence of his possession. During closing arguments the State argued, "Then you have the AR-15. You have the [Snapchat] video showing the defendant firing the AR-15 that was then found during the service of the search warrant." 7 VRP at 962. The State did not reference the AR-15 rifle being found in the apartment other than to identify the rifle found in the apartment as the same rifle seen in the Snapchat video.

Thus, we hold that the State properly elected to rely on Pointec's actual possession of the AR-15 rifle shown in the Snapchat video as the basis of its charge and, thus, Pointec was not entitled to a unanimity instruction.

### III. LFOs

In his supplemental brief, Pointec argues that the court imposed LFOs that are no longer authorized following our legislature's enactment of ESSHB 1783. Specifically, Pointec argues that the trial court's imposition of a $100 DNA collection fee, $200 criminal filing fee, and an

interest accrual provision are improper and should be stricken. The State agrees and we accept the State's concession.

ESSHB 1783 modified statutes relating to Washington's system of LFOs and established that the DNA database fee is mandatory only if the offender's DNA has not been previously collected as a result of a prior conviction. LAWS OF 2018, ch. 269, § 18. It also prohibits the imposition of the $200 criminal filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17. ESSHB 1783 also eliminates any interest accrual on nonrestitution LFOs. *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.3d 714 (2018). The new statutes apply prospectively to cases on appeal. *Ramirez*, 191 Wn.2d at 747.

According to the State, their records show that Pointec's DNA was previously collected and is on file with the Washington State Patrol Crime Lab. Therefore, the imposed DNA database fee should be stricken.

There does not seem to be any question that Pointec is "indigent" under RCW 10.101.010(3)(a). The State acknowledges that the sentencing court found Pointec indigent. Therefore, the $200 criminal filing fee should also be stricken because it is a discretionary fee that cannot be imposed on indigent defendants.

The judgment and sentence also contained an interest accrual provision that should be stricken because ESSHB 1783 eliminates interest accrual on nonrestitution LFOs. *Ramirez*, 191 Wn.2d at 747.

## CONCLUSION

We hold that any error by the court in not giving a unanimity instruction regarding the 9 mm handgun was harmless and the State properly elected to rely on Pointec's actual possession

No. 50345-0-II

of the AR-15 rifle captured in the video. Consequently, we affirm Pointec's convictions but we remand to the trial court to amend the judgment and sentence by striking the criminal filing fee, DNA collection fee, and the interest accrual provision on nonrestitution LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MAXA, A.C.J.

LEE, J.

11