# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50112-1-II |
| Respondent, | |
| v. | |
| SHANE CHRISTOPHER GILBERT, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Shane Christopher Gilbert appeals his conviction for possession of a controlled substance with the intent to deliver. Gilbert argues that (1) the trial court erred in admitting certain items of physical evidence because the State failed to establish the chain of custody, (2) the evidence is insufficient to show his constructive possession of drugs found in a car, and (3) he received ineffective assistance of counsel because his trial counsel did not move to suppress untested evidence purported to contain drugs.

We hold that (1) Gilbert failed to preserve his chain of custody argument for appeal, (2) there is sufficient evidence to support his conviction, and (3) Gilbert received effective assistance from his trial counsel. Consequently, we affirm Gilbert's conviction.

## FACTS

While patrolling near Bonney Lake, Deputy Dennis Miller observed a Toyota 4Runner parked in front of a residence, seemingly unoccupied. [1] Deputy Miller peered through the rear window of the 4Runner and observed a body lying on the floorboards between the front and back

---

[1] Neither party contends that Mr. Gilbert is the owner of the 4Runner.

seats. The upper half of the body was covered with clothing and a shop vac. Deputy Miller could see the body from the waist down. Deputy Ken Solbrack arrived at the scene to assist Deputy Miller. Both deputies repeatedly attempted to rouse the person by knocking on the window and speaking. The body did not move.

Fearing this person between the seats was either having a medical emergency or deceased, Deputy Miller opened the rear door. The person, later identified as Gilbert, moved his hand quickly toward his waistband area. Deputy Miller recognized Gilbert and was aware that he had an outstanding warrant for his arrest, so Deputy Miller took Gilbert into custody. Deputy Miller then searched Gilbert's person and found a glass drug pipe with residue, a zippered orange pouch, a small clear plastic bag containing a white crystalline substance, and forty dollars cash. Deputy Miller placed the items on the hood of his patrol vehicle. He did not open the orange pouch, but felt that the pouch contained something.

During the search, Gilbert began to shake and convulse as if he were suffering from a seizure. Deputy Solbrack called for medical assistance. Krystal Nyland emerged from the residence and alerted the deputies that Gilbert was hypoglycemic. Nyland's hair was dyed green and red. She retrieved some chocolate pudding to give to Gilbert. While Nyland knelt and administered scoops of pudding into Gilbert's mouth, the pair conversed. Neither Deputy Miller nor Deputy Solbrack heard what was said.

After speaking with Gilbert, Nyland stood up, grabbed the orange pouch from the hood of the patrol vehicle, and ran. Deputy Solbrack gave chase but was unable to catch Nyland. Deputy Solbrack returned to the scene, retrieved his patrol car, and continued to pursue Nyland. He located and apprehended Nyland, who was hiding in some blackberry bushes along the road.

2

The amount of time between Nyland's flight from the scene and her apprehension was less than a minute. Deputy Solbrack searched Nyland and found a small bag of suspected methamphetamine. She did not have the orange pouch. A K-9 Unit was brought to the scene and found the orange pouch in blackberry bushes up an embankment along where Nyland had run. Inside the orange pouch Deputy Miller found two bags: one containing a large uncut rock of suspected methamphetamine and the other containing smaller pieces of suspected methamphetamine.

Vance Mettlen, a firefighter and paramedic who responded to the aid call, observed a female with bright multicolored hair running down the street with "something baglike" in her hand. 2 Verbatim Report of Proceedings (VRP) at 340. Mettlen observed her moving quickly, falling and trying to throw the bag multiple times. Thomas Lewis, who had pulled over to the side of the road to yield to the firetruck, also saw Nyland. Lewis saw a woman with green hair staggering down the road and carrying what looked like a paper bag. Lewis observed her attempting to throw the bag multiple times. She then attempted to hide. Lewis directed Deputy Solbrack to her location.

Gilbert later admitted to Deputy Miller that he uses a large amount of methamphetamine. However, Gilbert denied selling methamphetamine, and denied possessing any that day.

The following day, Deputy Eric Jank searched the 4Runner and discovered a metal box on the floorboards between the front and back seats. The metal box was located under where Gilbert's legs would have been when he was first spotted by Deputy Miller. Inside the metal box were three bags of suspected methamphetamine, a digital scale, a cigarette package containing unused clear bags, and a plastic container with white residue. Deputy Jank photographed the

3

contents of the metal box before sending them for testing. One photograph depicted the three bags of suspected methamphetamine appearing to contain similar substances and packaged similarly.

Also on the following day, Gilbert made a telephone call while in police custody. On the call, Gilbert was heard saying "they hit me with 101 grams." 3 VRP at 463. He also said, "I had five ounces on me, and I dropped off two to Michelle," and "All I was going to do was drop off some to you all, some to my b**ch." 3 VRP at 463. The State charged Gilbert with possession of a controlled substance, to wit, methamphetamine, with the intent to deliver in violation of RCW 69.50.401(1)(2)(b).

At trial, witnesses testified to the above facts. Additionally, Deborah Price, an analyst from the Washington State Patrol Crime Laboratory, testified. She tested five different items of evidence obtained from the scene. She tested the bag from Gilbert's pants pocket and confirmed it contained 2.8 grams of methamphetamine. Price tested the contents of two bags from the orange pouch, the uncut rock and smaller pieces found in the orange pouch, which both contained methamphetamine. One of these bags weighed 52.5 grams. Price also randomly tested one of the three bags found inside the metal box. She found that the tested bag contained methamphetamine. [2] Price did not testify as to why she randomly tested one of the three bags from the box instead of testing all three. Further, she did not test the plastic container with the white residue found in the metal box.

---

[2] Price did not testify regarding how much the other bag from the orange pouch or the three bags from the metal box weighed. However, Deputy Miller testified that his combined weight of two bags from the orange pouch was 106.9 grams, including the weight of the bags. Deputy Jank stated his measurement of the three bags from the metal box was 36.7 grams.

The trial court admitted several exhibits during the proceeding. The small bag from Gilbert's pants pocket was marked as "Exhibit" 15. Exhibits 16 and 17 were the two larger bags containing the uncut rock and smaller pieces, found in the orange pouch. Exhibit 18 was the orange pouch itself. Gilbert did not object to the admission of Exhibits 15, 16, 17, or 18.

Exhibit 21 contained the three bags taken from the metal box. Deputy Jank took a photograph of these three bags during his search of the metal box, which was admitted as Exhibit 13. Gilbert did not object to the admission of either Exhibits 13 or 21. Exhibit 24 was the plastic container found in the metal box. Gilbert objected to the relevancy of Exhibit 24, but the court admitted the evidence over his objection. Exhibit 26 was the metal box itself and was admitted without objection.

During closing argument, Gilbert's counsel aimed to cast doubt on Exhibit 21, because two of the three bags were not tested. Specifically, Gilbert's attorney argued, "But keep in mind, ladies and gentlemen, that what's been admitted as No. 21, which contained three packages, she only weighed or tested one. So what's the other? Don't know. If we speculate, but we can't. . . . You['ve] got to run it through these tests. You got to compare the crystals." 4 VRP at 550. The State's closing argument emphasized the cumulative amount of methamphetamine as Gilbert's intent to deliver.

A jury found Gilbert guilty as charged. Gilbert appeals his conviction.

## ANALYSIS

### I. CHAIN OF CUSTODY OF THE ORANGE POUCH AND ITS CONTENTS

Gilbert argues that Exhibits 15, 16, and 17 were improperly admitted because the State did not prove a sufficient chain of custody after Nyland took the pouch from Deputy Miller's

patrol vehicle and ran from the scene. The State argues that Gilbert failed to preserve this argument by not objecting during trial.

We agree with the State and hold that Gilbert failed to preserve his chain of custody argument for appeal because he failed to object to the exhibits' admission below.

With limited exceptions, we will not review an issue raised for the first time on appeal. RAP 2.5(a). A party objecting to the admission of evidence must make a timely and specific objection at trial unless the error constitutes manifest constitutional error. RAP 2.5(a)(3). When the defendant fails to object to an alleged error at trial, he "has the initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'" *State v. Grimes*, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)). "Generally evidentiary errors are not of [a] constitutional magnitude." *State v. Grier*, 168 Wn. App. 635, 643 n.16, 278 P.3d 225 (2012) (citing *State v. Chase*, 59 Wn. App. 501, 508, 799 P.2d 272 (1990)).

Here, Gilbert did not object to the admission of Exhibits 15, 16, or 17 during his trial. On appeal, Gilbert makes no attempt to show that the admission of these exhibits is manifest constitutional error. We hold that Gilbert failed to preserve his chain of custody issue regarding Exhibits 15, 16, and 17, and we do not consider Gilbert's chain of custody argument.

## II. CONSTRUCTIVE POSSESSION OF THE METAL BOX

Gilbert argues that insufficient evidence supports his conviction because the State failed to prove his constructive possession of the metal box that contained a digital scale, three bags of suspected methamphetamine, a cigarette package containing unused clear bags, and a plastic

container with white residue. [3]  He contends that he did not exercise dominion or control over the metal box, but was merely in close proximity to it.  Specifically, Gilbert argues that "[a]bsent Exhibits 15, 16, and 17, as argued [previously], and absent Exhibits 21 and 24, there is no evidence that Mr. Gilbert possessed methamphetamine with intent to deliver."[4,5]  Br. of Appellant at 18-19.  We hold that sufficient evidence supports Gilbert's possession of methamphetamine.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the state, could find the elements of the charged crime beyond a reasonable doubt.  *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000).  "In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it."  *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).  Such inferences must be drawn in favor of the State and interpreted most strongly against the defendant.  *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  We defer to the jury on issues of conflicting testimony, credibility of witnesses,

---

[3] Gilbert appears to briefly argue that the State failed to establish his dominion and control over the methamphetamine and "scales in the box."  Br. of Appellant at 15.  But the State was under no obligation to prove that Gilbert was in legal "possession" of the digital scale.  In the criminal law context, the "constructive possession" doctrine allows the State to prove possession of contraband in cases where possession of the item is an element of the crime.  *See State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969); *State v. George*, 146 Wn. App. 906, 919-20, 193 P.3d 693 (2008).  Gilbert provides no law to support an argument that the State was required to prove constructive possession of the *scale*, so we do not address it.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549(1992); RAP 10.3(a)(5)-(6).

[4] Exhibits 15, 16, 17, and 21 were all baggies containing methamphetamine.  Exhibit 24 was a plastic container with white residue.

[5] Despite this statement, Gilbert makes no separate argument that insufficient evidence supported his intent to distribute.  His brief argues only constructive possession.

and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d 840 (2014). Circumstantial evidence is not any less reliable or probative than direct evidence in reviewing the sufficiency of the evidence supporting a jury verdict. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Here, the State was required to prove beyond a reasonable doubt (1) that Gilbert possessed methamphetamine (2) with the intent to deliver it (3) in the State of Washington. RCW 69.50.401. Gilbert argues only that the State failed to adequately prove constructive possession of the metal box.

In reviewing claims of constructive possession, this court examines whether, under the totality of the circumstances, the defendant exercised dominion and control over the contraband in question. *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). In some circumstances the ability to immediately take actual possession of an item can establish dominion and control, however, mere proximity to the item by itself cannot. *Turner*, 103 Wn. App. at 521. Where only mere proximity is established, other facts must enable the trier of fact to infer dominion and control. *Turner*, 103 Wn. App. 521. Such factors include ownership of the item or dominion and control over the premises. *Turner*, at 521-22. An automobile may be considered premises for the purpose of determining whether the defendant exercised dominion and control over the premises where the narcotic drugs were found. *State v. Coahran*, 27 Wn. App. 664, 668-69, 620 P.2d 116 (1980).

In support of his argument, Gilbert cites *State v. Callahan*, 77 Wn.2d 27, 31, 459 P.2d 400 (1969); *State v. Spruell*, 57 Wn. App. 383, 388, 788 P.2d 21 (1990); and *State v. George*, 146 Wn. App. 906, 923, 193 P.3d 693 (2008), where there was no constructive possession found.

However, these cases are factually distinguishable. In *State v. Callahan*, the defendant stayed on a houseboat for two or three days but was not a tenant. *Callahan*, 77 Wn.2d at 31. The defendant was in close proximity to the drugs, admitted to handling them earlier in the day, and had books, guns, and a set of broken scales on board the houseboat. *Callahan*, 77 Wn.2d at 31. However, another person testified that the drugs belonged to him, not the defendant. *Callahan*, 77 Wn.2d at 31. Because the State did not controvert the direct proof of ownership of the drugs by the other person, the State could not establish the defendant's dominion and control over them. *Callahan*, 77 Wn.2d at 31-32.

Relying on *Callahan*, *State v. Spruell* declined to find constructive possession when the defendant was a mere visitor in the house, was proximate to the drugs found, and momentarily handled the drugs. *Spruell*, 57 Wn. App. at 388. Similarly, *State v. George* focuses on mere proximity with the State failing to prove facts or circumstances regarding possession. *George*, 146 Wn. App. at 923.

However the facts of this case are more similar to those in *State v. Mathews*, 4 Wn. App. 653, 484 P.2d 942 (1971). In *Mathews*, this court determined a passenger exercised dominion and control over heroin found in the car because not only was the heroin located in very close proximity to the passenger, but because additional factors existed. *Mathews*, 4 Wn. App. at 656-58. Mathews was a known heroin user and had heroin paraphernalia in his pocket, he had purchased and used heroin that day, and the other passengers in the car testified that they were unaware the heroin was there. *Mathews*, 4 Wn. App. at 656-57.

Here, considering the totality of the circumstances, Gilbert exercised dominion and control over the methamphetamine contained in the metal box. *Turner*, 103 Wn. App. at 521.

9

Similar to *Mathews*, Gilbert was in close proximity to the metal box, admitted to being a methamphetamine user, and had other methamphetamine and methamphetamine paraphernalia on his person. The metal box was in the passenger compartment, directly underneath Gilbert at the time of his arrest, allowing him the opportunity to immediately take actual possession of it. Further, Gilbert made incriminating statements regarding intent to deliver different amounts of methamphetamine in a recorded phone conversation. Moreover, there was no evidence that another person claimed ownership of the metal box.

Consequently, there was sufficient evidence for the jury to find, beyond a reasonable doubt, that Gilbert had constructive possession of the methamphetamine in the metal box.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Gilbert argues his trial counsel was ineffective for failing to suppress Exhibit 24, a plastic container with white residue, and Exhibit 21, three bags of a crystalline substance. He contends he was prejudiced by these exhibits' admission into evidence because the substances were partially or totally untested. The State argues Gilbert waived this issue regarding Exhibit 24 because he omitted the issue from his assignment of error. We consider Gilbert's arguments regarding both Exhibits 24 and 21, and hold that Gilbert did not receive ineffective assistance.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To show that he received ineffective assistance of counsel, a defendant must show that defense counsel's conduct was deficient and that the deficient performance resulted in prejudice. *State v. Linville*, ___Wn.2d___, 423 P.3d 842, 847 (2018).

Because both prongs must be met, a failure to show either prong will end our inquiry. *State v. Classen*, ___Wn. App. 2d ___, 422 P.3d 489, 498 (2018).

To establish deficient performance, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *State v. Johnston*, 143 Wn. App. 1, 16, 177 P.3d 1127 (2007). Trial strategy and tactics cannot form the basis of a finding of deficient performance. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Prejudice can be shown only if there is a reasonable probability that, absent counsel's unprofessional errors, the result of the proceeding would have been different. *Johnston*, 143 Wn. App. at 16. We review ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

There is a strong presumption that defense counsel's conduct was not deficient. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). We do not consider matters outside the trial record. *Linville*, 423 P.3d at 847.

Failing to bring a motion to suppress evidence can constitute ineffective assistance. *Reichenbach*, 153 Wn.2d at 137. But counsel may legitimately decline to move for suppression on a particular ground if the motion is unfounded. *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007). There is no ineffectiveness of counsel if a challenge to admissibility of evidence would have failed. *Nichols*, 161 Wn.2d at 14-15.

A.      *Exhibit 24, the Plastic Container*

As an initial matter, the State contends that we should not consider this issue because Gilbert failed to assign error regarding Exhibit 24, the plastic container found in the metal box. We disagree.

Generally, error must be assigned for an issue to be considered on appeal. *State v. Olson*, 74 Wn. App 126, 128, 872 P.2d 64 (1994), aff'd 126 Wn.2d 315, 893 P.2d 629 (1995). Nevertheless, a "'technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review. . . . [W]here the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief, [we] will consider the merits of the challenge.'" *State v. Williams*, 96 Wn.2d 215, 220, 634 P.2d 868 (1981) (some alterations in original) (quoting *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979)).

Here, although Gilbert fails to mention Exhibit 24 in his assignment of error 5, Brief of Appellant at 1, he makes arguments regarding Exhibit 24 multiple times in his brief. The nature of the challenge is clear, and the State was on notice of Gilbert's argument regarding Exhibit 24 and had the opportunity to respond. Thus, we reach the merits of Gilbert's argument on Exhibit 24 for his ineffective assistance of counsel claim.

Gilbert contends that because the white residue in the container was not tested, his counsel was ineffective for failing to move to suppress Exhibit 24. We disagree.

We first recognize that Gilbert's counsel objected to the relevance of Exhibit 24, but the objection was overruled. Counsel's relevancy objection could be viewed as addressing the lack of testing because without knowing the identity of the residue, the container's relevancy was

12

doubtful. Viewed in this light, counsel's performance was not deficient because he made the objection, but was overruled.

Moreover, even assuming counsel's performance was deficient, Gilbert has not shown prejudice. Although the State emphasized the cumulative amount of methamphetamine in this case to help prove the intent to deliver, the record does not reflect that the plastic container residue was calculated in this total amount.

The evidence admitted at trial included the digital scale, clean plastic bags, methamphetamine in Gilbert's pants pocket, methamphetamine in the orange pouch, and Gilbert's statements in the recorded phone conversation. There is not a reasonable probability that the outcome of Gilbert's trial would have been different. We hold that Gilbert did not receive deficient performance from his trial counsel, nor was he prejudiced by the admission of Exhibit 24 into evidence. As such, Gilbert's ineffective assistance of counsel as to Exhibit 24 fails.

B.       *Exhibit 21, Three Bags of a White Crystalline Substance*

Exhibit 21 consisted of three baggies filled with what appeared to be a similar substance. Deborah Price, the crime laboratory analyst, tested the substance from one of these three baggies, yet all three baggies were admitted into evidence without objection. Gilbert contends that his trial counsel was deficient for failing to move to suppress the two untested bags of crystalline substance in Exhibit 21. Gilbert argues he was prejudiced because the jury convicted him partially because of the sheer volume of methamphetamine produced in evidence. We hold that Gilbert's trial counsel was not deficient.

When a substance is consistent in appearance and packaging, scientific testing of a random portion of the substance is reliable and supports a finding that the total amount is consistent with the result of the randomly tested portion. *State v. Caldera*, 66 Wn. App 548, 550, 832 P.2d 139 (1992). "[A] toxicologist can sometimes provide random sampling testimony, indicating a tested substance was most likely similar to an untested substance. . . . [S]uch testimony must be based on the foundation that the tested and untested materials appeared similar." *State v. Crowder*, 196 Wn. App. 861, 879, 385 P.3d 275 (2016), *review denied*, 188 Wn.2d 1003 (2017).

Here, Exhibit 21 consisted of three bags of a white crystalline substance. These three bags were discovered in the metal box found where Gilbert was laying in the 4Runner. The analyst chose one of the three bags at random. The results reveal the tested bag in Exhibit 21 contained methamphetamine. The analyst did not explain why she chose only one bag at random in Exhibit 21 instead of testing all three, nor did she testify that they all appeared similar. Because the State arguably failed to lay a proper foundation, Gilbert's counsel could have properly objected to admission of the untested bags.

However, Gilbert does not point to any evidence of trial counsel's strategic or tactical decisions in the record supporting his argument that his trial counsel was ineffective. Conversely, the failure to object to this easily remedied foundational error appears to be tactical as evidenced in the record by counsel's closing argument. In his closing remarks, Gilbert's attorney argued, "But keep in mind, ladies and gentlemen, that what's been admitted as No. 21, which contained three packages, she only weighed or tested one. So what's the other? Don't know. If we speculate, but we can't. . . . You['ve] got to run it through these tests. You got to

14

compare the crystals." 4 VRP at 550. The reasonable doubt argument about the two untested bags was a tactic utilized by Gilbert's counsel. Trial tactics cannot form the basis of a finding of deficient performance.

Because Gilbert fails to meet his burden to show that trial counsel's performance was deficient as to Exhibit 21, his ineffective assistance of counsel claim fails.

APPELLATE COSTS

Gilbert argues that this court should decline to impose appellate costs because he is indigent. The State represents that it will not seek appellate costs in this case. We accept the State's representation and waive appellate costs.

We affirm Gilbert's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Johanson, J.

Melnick, J.