[No. 24691-1-II. Division Two. November 22, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. RICKEY FRANKLIN TURNER, *Appellant*.

516

*R. A. Lewis* (of *Knapp, O'Dell & Lewis*), for appellant (appointed counsel for appeal).

*Bradley W. Andersen, Prosecuting Attorney,* and *Peter S. Banks, Deputy,* for respondent.

BRIDGEWATER, J. — Rickey Franklin Turner appeals his conviction of unlawfully possessing a firearm and obstructing a law enforcement officer. Because the State conceded instructional error, we review the case only to determine

whether we should order a new trial or dismiss for lack of sufficient evidence. We hold that where the owner/operator of a vehicle has dominion and control of a vehicle and knows a firearm is inside the vehicle, there is sufficient evidence of constructive possession of a firearm for the crime of unlawfully possessing a firearm. We reverse and remand for a new trial.

On the evening of December 28, 1998, Sergeant Rogen of the Skamania County Sheriff's Department was patrolling Second Street in Stevenson when he saw Turner from behind standing and urinating alongside a truck. Rogen parked his patrol car and approached Turner to ask why he had been urinating in public. Turner denied it. When Rogen asked him for identification, Turner did not produce any; instead, he became agitated and profane, telling the deputy that he "had no reason to stop him." Rogen could smell beer on Turner and noted that his speech was slurred. Rogen testified that Turner threatened to assault him and lunged toward him, brushing up against him. Turner did not state his name until after Rogen arrested him for public indecency and failing to identify himself. Rogen then asked Turner if he had any weapons, and Turner retorted that it was none of his business. Deputy Helton arrived on the scene and searched the truck, finding a rifle inside.

Helton testified that Donald Graham was seated in the passenger seat of the small, import pickup. Helton checked Graham's identification and told him he was free to leave. Graham identified an archer's bow inside the pickup as his, then retrieved a fanny pack from the truck and walked away. Graham did not take the bow when he left. Helton then searched the truck's interior, finding another bow, a small caliber rifle, and ammunition. The rifle was inside a bow case that was lying partially open across the backseat behind the driver's seat.

Graham testified that he and Turner had been out in Turner's pickup "bow hunting and four-wheeling" and had stopped in Stevenson to clean the truck's wheels. Graham said that the rifle and one of the bows were his and that he

had bought the rifle from Turner a few years earlier for $100. He said that Turner had not handled the rifle or had it in his possession the entire day.

Turner knew that a prior conviction precluded him from having firearms, and he testified that he had "sold all my rifles, got rid of all my guns." Turner said that he knew Graham was bringing the rifle along that day, but he never touched it.

Turner was charged with unlawful possession of a firearm, obstructing a law enforcement officer, and indecent exposure. The trial court granted Turner's motion for a directed verdict for the count of indecent exposure because of insufficient evidence. The jury found Turner guilty of the remaining two counts.

The State concedes jury instruction four was improper and constitutes reversible error. But Turner seeks dismissal with prejudice because the evidence was insufficient on both counts.

## I. Jury Instruction

■ Turner properly argues that jury instruction four, which allowed the jury to consider an alternative basis for the charge of unlawful possession of a firearm, was improper. "It is reversible error to try a defendant under an uncharged statutory alternative because it violates the defendant's right to notice of the crime charged." *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996). When the information charges only one of the alternatives, it is error to instruct the jury that they may consider other ways or means by which the crime could have been committed. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988); *see also State v. Severns*, 13 Wn.2d 542, 125 P.2d 659 (1942).

Here, the information charged only two of the alternatives to unlawful possession of a firearm, omitting the illegal ownership alternative. RCW 9.41.040(1)(b). In the jury instruction, however, the trial court provided all three alternatives to the jury. The State correctly concedes re-

versible error and recommends a new trial.

Because the State properly concedes error, we do not consider Turner's other claims of prosecutorial misconduct in closing, and ineffective assistance of counsel. We do consider, however, Turner's challenge to the sufficiency of the evidence as insufficiency would mandate dismissal with prejudice.

## II. Sufficiency of the Evidence

Turner claims there was insufficient evidence to support his conviction for unlawful possession of a firearm and obstructing a law enforcement officer.

■ ■ Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. In determining whether the necessary quantum of proof exists, we need not be convinced of the defendant's guilt beyond a reasonable doubt; we need only be satisfied that substantial evidence supports the State's case. *State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303 (1992).

A. Unlawful Possession of a Firearm

■ To convict Turner of unlawful possession of a firearm as charged, the State had to prove that he knowingly had a firearm in his possession or his control and that he had previously been convicted of a felony. RCW 9.41.040(1)(b). *State v. Anderson*, 141 Wn.2d 357, 5 P.3d 1247 (2000). Turner conceded he previously had been convicted of a felony.

■ Possession may be actual or constructive. *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). A

jury can find a defendant constructively possessed a firearm if the defendant had dominion and control over it or over the premises where the firearm was found. *Echeverria*, 85 Wn. App. at 783. A vehicle is a "premises" for purposes of this inquiry. *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971). One can be in constructive possession jointly with another person. *State v. Morgan*, 78 Wn. App. 208, 212, 896 P.2d 731, *review denied*, 127 Wn.2d 1026, 904 P.2d 1158 (1995).

As Turner asserts, close proximity alone is not enough to establish constructive possession; other facts must enable the trier of fact to infer dominion and control. *State v. Spruell*, 57 Wn. App. 383, 388-89, 788 P.2d 21 (1990). But the ability to reduce an object to actual possession is an aspect of dominion and control. *Echeverria*, 85 Wn. App. at 783. No single factor, however, is dispositive in determining dominion and control. *State v. Collins*, 76 Wn. App. 496, 501, 886 P.2d 243, *review denied*, 126 Wn.2d 1016 (1995). The totality of the circumstances must be considered. *Collins*, 76 Wn. App. at 501.

This case is similar to *Echeverria*, where the court found that a rational trier of fact could reasonably infer that the defendant possessed or controlled a gun that was within his reach. The gun was in plain sight, sticking out from underneath the defendant's driver's seat. *Echeverria*, 85 Wn. App. at 783.

Here, Turner admitted that he was driving his truck with his friend, Graham, and that he knew the rifle was in the backseat. Graham claimed the gun was his. The evidence showed that Turner was in close proximity to the rifle, knew of its presence, was able to reduce it to his possession, and had been driving the truck in which the rifle was found. Turner does not dispute that the truck was his and that he had dominion and control over the truck. Officer Helton searched the truck after Turner was arrested. He testified that he could see the rifle in a partially open case in the backseat behind the driver's seat in the extended cab of the small pickup truck. He stated that the rifle was within an

arm's reach. Like *Echeverria*, a rational trier of fact could find that Turner possessed or controlled the rifle found in the open case on the backseat of his truck.

Turner essentially claims his case is indistinguishable from *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969), which held that close proximity to illegal drugs was not sufficient to establish constructive possession. Turner is correct that, in *Callahan* and in this case, there was another person present who claimed the item. But exclusive control by the defendant is not required. *State v. Amezola*, 49 Wn. App. 78, 86, 741 P.2d 1024 (1987). Another person claiming ownership is only one factor in evaluating whether the defendant has constructive possession. *See Collins*, 76 Wn. App. at 501. Moreover, Turner confuses the concepts of dominion and control over premises with mere close proximity to an item. The defendant in *Callahan* did not have dominion and control over the premises where the drugs were found. *Callahan*, 77 Wn.2d at 31. In contrast, Turner had dominion and control of the truck where the rifle was found; he owned the truck and was the driver.

Turner asserts that "proof of control over premises alone is insufficient to show dominion of an item." Br. of Appellant at 15. Turner ignores that the Supreme Court in *Callahan* relied on a line of cases that held that when there is sufficient evidence of the defendant's dominion and control over the premises, the defendant may be found guilty of constructive possession of drugs. *Callahan*, 77 Wn.2d at 29-30 (citing *State v. Weiss*, 73 Wn.2d 372, 438 P.2d 610 (1968); *State v. Chakos*, 74 Wn.2d 154, 443 P.2d 815 (1968), *cert. denied*, 393 U.S. 1090 (1969); *State v. Mantell*, 71 Wn.2d 768, 430 P.2d 980 (1967); *State v. Morris*, 70 Wn.2d 27, 422 P.2d 27 (1966)). Further, Turner misconstrues the holding of *Mathews*, 4 Wn. App. 653. In *Mathews*, the court held that the defendant, who was a passenger in an automobile on a trip from Portland, exercised dominion and control over the area in the backseat of the automobile where heroin was found. The court stated:

We find substantial evidence in the record establishing circum-

stances which would justify a finding that defendant was in constructive possession of the narcotic drug heroin because he exercised dominion and control of the area in which the heroin was found. Our decision should not be construed as establishing a rule that a passenger seated in proximity to concealed narcotic drugs in an automobile is deemed to be in constructive possession of the drugs. However, that proximity coupled with the other circumstances linking him to the heroin was sufficient to create an issue of fact on constructive possession.

*Mathews*, 4 Wn. App. at 658. The court held that under the facts of that case proximity to the drugs along with evidence of control of the backseat area was sufficient evidence for a trier of fact to find constructive possession. Contrary to Turner's assertions, the court was not holding that proof of control over premises is insufficient to show constructive possession. Instead, the court was reemphasizing that there is no bright-line rule that a passenger seated near drugs is automatically deemed to be in constructive possession of the drugs.

The court in *Cantabrana* highlighted this point when it held that jury instructions cannot compel the jury to infer constructive possession if it found the defendant had dominion and control over the premises where the item is found. *State v. Cantabrana*, 83 Wn. App. 204, 921 P.2d 572 (1996). "Instead, dominion and control over premises in which police discover drugs is but one factor in determining whether the defendant had dominion and control, i.e., constructive possession, over the drugs themselves." *Cantabrana*, 83 Wn. App. at 208. Significantly, the court added:

> It is important to distinguish cases involving claims of improper jury instructions from cases involving claims of insufficient evidence. . . . When the sufficiency of the evidence is challenged on the basis that the State has shown dominion and control only over premises, and not over drugs, courts correctly say that the evidence is sufficient because dominion and control over premises raises a rebuttable inference of dominion and control over the drugs.

*Cantabrana*, 83 Wn. App. at 208. The court in *Cantabrana*

explained its holding with an example of an appropriate instruction in a constructive possession case: "A person who has dominion and control over premises where drugs are found may be inferred to have dominion and control over the drugs themselves. This inference is not binding upon you and it is for you to determine what weight, if any, the inference is to be given." *Cantabrana*, 83 Wn. App. at 209 n.3. Thus, a jury may infer that a defendant has constructive possession of an item when that person has dominion and control over the premises where an item is located. Ownership and actual control of a vehicle establish dominion and control.

The evidence clearly showed that the truck was Turner's, that he knew the firearm was in his truck for most of the day, and that it was directly behind him in the truck. He knew that he was transporting the firearm and did nothing to remove it from his presence. In *State v. Reid*, 40 Wn. App. 319, 325-26, 698 P.2d 588 (1985), we held that if there was a reasonable basis for either constructive or actual possession, the matter was sufficient to present to the jury. We maintain our past position and add the requirement of knowledge as set forth by *Anderson*, 141 Wn.2d 357.[1] Thus, where there is control of a vehicle and knowledge of a firearm inside it, there is a reasonable basis for knowing constructive possession, and there is sufficient evidence to go to the jury. In this case, there was even more to convict Turner, the proximity of the firearm, the extended duration of the time the firearm was in the truck, and that Turner did nothing to reject the presence of the firearm in the truck.

We hold that there was sufficient evidence for a rational trier of fact to find that Turner had constructive possession of the firearm located in his truck.

---

[1] In *Anderson*, the Washington Supreme Court rejected the assertion that unlawful possession of a firearm is a strict liability defense and held that knowledge of the possession or presence of a firearm is an element of the crime. *Anderson*, 141 Wn.2d 357.

## B. Obstruction of a Law Enforcement Officer

"A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

Turner argues that he did not obstruct the officer by merely refusing to give the officer his name. Turner is correct that mere refusal to answer questions cannot be the basis of an arrest for obstruction of a police officer. *See State v. White*, 97 Wn.2d 92, 106, 640 P.2d 1061 (1982); *State v. Hoffman*, 35 Wn. App. 13, 16, 664 P.2d 1259 (1983). But Turner did more than merely refuse to talk.

The State cites *State v. Contreras*, 92 Wn. App. 307, 966 P.2d 915 (1998), where the defendant refused to talk with the police. In *Contreras*, the defendant's additional actions of disobeying police orders to put his hands up and to exit a vehicle and giving false information hindered and delayed the officers' investigation of a possible vehicle prowl. The court held those actions were sufficient to support an arrest for obstructing a law enforcement officer. *Contreras*, 92 Wn. App. at 317.

Here, Turner not only refused to give his name, he threatened Officer Rogen and lunged at him.[2] We hold that Turner's actions are sufficient to support a conviction for

---

[2] Officer Rogen's direct examination included:

Q:   When you first approached Mr. Turner to ask him why he was there and for his identification, what was his demeanor to you?

A:   Well, very degrading. He made numerous threats to me that he was going to assault me, he was going to hit me, he was going to somehow hurt me, that I had no reason to even be contacting him.

. . . .

Q:   At any time during your conversation with him, did he approach your person?

A:   Yes, he did. Just before I arrested him, he lunged at me.

Q:   Did he actually strike you?

A:   Just a—just barely brushed me. I stepped aside. I saw him coming, noticed he was starting to move towards me, and then he jumped suddenly. I stepped aside, and that's when I put hands on him and cuffed him up.

Report of Proceedings at 38-39.

obstructing a law enforcement officer.

██ ██ Turner further contends that Rogen was not performing official duties as required by the statute because Rogen was not acting lawfully at the time of the alleged obstructive behavior. Specifically, he maintains that Rogen did not have reasonable suspicion to detain him and lacked probable cause to arrest him. The statute requires only that an officer be discharging his official powers or duties. RCW 9A.76.020. Contrary to Turner's contention, the officer was performing official duties because there is no evidence that he was acting in bad faith. *State v. Hudson*, 56 Wn. App. 490, 496-97, 784 P.2d 533, *review denied*, 114 Wn.2d 1016 (1990). " 'A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.' " *State v. Belieu*, 112 Wn.2d 587, 601-02, 773 P.2d 46 (1989) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)). Officers are performing official duties, even during an arrest that later turns out to be without probable cause, provided they were not acting in bad faith or engaging in a "frolic" of their own. *Hudson*, 56 Wn. App. at 496-97. Here, Rogen had a reasonable suspicion that Turner was committing the crime of public indecency, RCW 9A.88.010,[3] when he saw Turner standing with his legs apart, his hands between his legs, and a steady stream of urine.

We hold that there was sufficient evidence to support Turner's conviction for obstructing a law enforcement officer.

Reversed and remanded for trial.

MORGAN, J., and PENOYAR, J. Pro Tem., concur.

---

[3] RCW 9A.88.010 requires an intentional exposure, in an open and obscene manner, of the defendant's person.