**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54554-3-II |
| Respondent, | |
| v. | |
| KAZUO LOKENI ROPATI, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Kazuo Lokeni Ropati appeals his convictions for second degree unlawful possession of a firearm and making a false statement to a public servant. He argues the State presented insufficient evidence of possession to support his unlawful possession of a firearm conviction and the trial court abused its discretion when it admitted a recording of a phone call Ropati made from jail. We hold sufficient evidence supported Ropati's unlawful possession of a firearm conviction, and the trial court did not abuse its broad discretion in admitting the jail call recording. We affirm.

FACTS

I. FACTS UNDERLYING THE CHARGES

Pierce County Sheriff's Deputy Jeffrey Gudaitis and Department of Corrections Community Corrections Officer Stephen Moffitt were both in a patrol car looking for a suspect involved in an unrelated incident when Gudaitis saw Ropati riding as a passenger in a Honda Accord. He noticed that Ropati was not wearing a seat belt. Ropati looked over at the patrol car and immediately reached for his seat belt.

Gudaitis and Moffitt then made a U-turn to follow the Honda, and the Honda made two quick turns without signaling. The officers activated the patrol car lights, and the Honda pulled into an empty parking lot. As the Honda continued through the parking lot, Ropati reached back into the rear passenger area of the Honda for approximately 7 to 10 seconds.

Gudaitis was aware that in a Honda Accord, the trunk can be accessed through the armrest area in the middle of the back seat. Ropati appeared tall enough to reach that access point from the front passenger seat, so the officers were concerned he had accessed a firearm.

The officers approached the car and saw a folded blanket in the back seat of the Honda with a ukulele on top. When they asked Ropati why he had reached toward the back of the car, Ropati said he was putting his ukulele on the blanket so that it would not be in his lap during the traffic stop.

Gudaitis explained that he was concerned about Ropati's possible access to a weapon, and he asked Ropati to step out of the car. When Ropati stepped out, Moffitt recognized him as someone who was under Department of Corrections supervision and had a warrant for his arrest. Ropati then gave the officers a false name.

Both the driver and Ropati consented to a search of the car. When Gudaitis opened the rear passenger armrest and looked through the access point to the trunk, he saw a black handgun in a holster next to a clear extended magazine. These items were placed "right next to the access point." 3 Verbatim Report of Proceedings (VRP) at 408.

After receiving *Miranda*[1] warnings, Ropati admitted to lying about his name because he knew he had a felony warrant. However, he denied putting the firearm in the trunk and said his DNA would not be on it.

Less than two hours after his arrest, Ropati made a telephone call from the Pierce County Detention Center. In the call, he said, "I need you guys to go get my car." Ex. 6. A woman responded, "[someone] has your car . . . the Honda." *Id.* Later the woman asked, "They . . . just ran up on you?," presumably referring to the police. *Id.* Ropati said, "F*** man, I should have blasted them." *Id.*

The State charged Ropati with second degree unlawful possession of a firearm and making a false or misleading statement to a public servant.

## II. PRETRIAL MOTIONS

Ropati filed a motion in limine to exclude the jail call recording as irrelevant and more prejudicial than probative. Ropati argued there was not enough context to show that he was referring to the police during the traffic stop when he said, "I should have blasted them." *Id.* He described this inference as "speculation on the State's part" that would be "incredibly prejudicial" and "not very probative." 3 VRP at 362.

The State responded that Ropati made this statement shortly after he was arrested and that he was addressing what happened during the traffic stop. The State contended that this evidence was highly probative because it indicated Ropati possessed the firearm during the stop. Ropati also referenced "'my car'" during the call, and ownership of the car is relevant to possession of the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

firearm found in the car trunk. *Id.* at 364. The State further argued that the probative value of this evidence was not substantially outweighed by a danger of unfair prejudice, saying this was Ropati's own statement and ER 403 is about "protecting the defendants from an emotional response from the jury," not "protecting defendants from themselves." *Id.*

The trial court agreed that admitting this statement would be prejudicial. However, the court ultimately ruled that "on balance, it's more probative than it is prejudicial" because the statement is probative of whether Ropati owned the car and possessed the firearm. *Id.* at 365. The trial court denied Ropati's motion to exclude the recording.

III. TRIAL

At trial, witnesses testified consistent with the facts above. Deputy Gudaitis recalled that when he and Officer Moffitt initiated the traffic stop, "most of [Ropati's] entire upper half of his body was turned all the way around, reaching back as far as he could" for "a longer period of time than what's normal for a traffic stop." *Id.* at 394-95. Gudaitis believed, based on his observations, that it would have been possible for Ropati to reach the trunk from the front passenger seat. Moffitt similarly stated, "I could see [Ropati's] full arm going into the back seat and he was turned around, basically facing in between the two seats." *Id.* at 465. Gudaitis testified that when he searched the car, he saw a loaded black handgun in a holster and a clear extended magazine in the trunk, "right next to the access point" from the back seat. *Id.* at 408.

The State presented evidence from a DNA analyst who determined that a mixed DNA profile of four individuals was present on the slide, grip, and trigger of the firearm. Ropati was identified as "a possible contributor" to the DNA profile, and the analyst explained that it was statistically 9.8 decillion times more likely that Ropati's DNA was present on the slide, along with

three unknown contributors, than a mixture of four random individuals' DNA. *Id.* at 523. It was 270 septillion times more likely that Ropati was a contributor to the DNA found on the grip. A weapons analyst verified that the firearm was real and operable. The State played the recording of Ropati's jail call.

The jury was instructed, "A person commits the crime of Unlawful Possession of a Firearm in the Second Degree when he or she knowingly has a firearm in his or her possession or control and he or she has previously been convicted of a felony." Clerk's Papers (CP) at 174. The jury was also instructed that possession may be actual or constructive. "Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item." CP at 178. The parties stipulated that Ropati had previously been convicted of a felony for purposes of the prior conviction element of unlawful possession of a firearm.

In closing, the State argued that it had proved the possession element beyond a reasonable doubt because DNA evidence showed Ropati "had to have had this firearm in his hands or in his physical custody at some point." 4 VRP (Feb. 10, 2020) at 613. The State further argued that it proved Ropati possessed the gun on the day in question because officers saw Ropati reach back toward where the firearm was found for at least seven seconds and because a jail call from that date recorded Ropati saying, "'I should have blasted them.'" *Id.* at 615. According to the State, this statement meant "I should have shot them" and signified that Ropati was holding the firearm when the traffic stop occurred. *Id.*

During its rebuttal, the State replayed the jail call and argued, "I should have shot them with the firearm I [had] in my hands . . . [is] a reasonable inference about what he's saying." *Id.* at

638. The State also cautioned, "Don't be swayed by the fact that he was thinking about shooting two police officers. That's not what this evidence is about. This evidence is about demonstrating, along with all of the other evidence, that he had the firearm in his actual possession. That's what it's evidence of." *Id.*

During deliberations, the jury asked, "Can you explain dominion in regards to as the law states?" CP at 188. Over Ropati's objection, the trial court responded with an additional instruction clarifying that proximity alone is insufficient to establish constructive possession and that dominion and control need not be exclusive to one person. It further instructed the jury to "consider all the relevant circumstances in the case" when deciding whether Ropati had dominion and control over the firearm, including "whether the defendant had the ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the firearm was located." CP at 189. The instruction concluded, "No single one of these factors necessarily controls your decision." *Id.*

The jury found Ropati guilty of both charged offenses. He appeals his convictions.[2]

---

[2] On July 6, 2021, Ropati filed a motion for voluntary withdrawal of his appeal, explaining that the superior court had denied his motion for resentencing pursuant to the Washington Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), because his appeal was pending before this court. We denied Ropati's motion to withdraw the appeal and granted permission under RAP 7.2(e) for the trial court "to enter an amended judgment and sentence that conforms with *Blake* at its earliest opportunity." Order Den. Mot. for Voluntary Withdrawal of Appeal and Granting Trial Ct. Permission to Amend J. & Sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Ropati argues the State presented insufficient evidence to support his conviction for unlawful possession of a firearm. He contends that the State's evidence "showed nothing more than mere proximity to and a momentary handling of the gun," which is insufficient to establish actual or constructive possession. Opening Br. of Appellant at 14. We disagree.

Evidence is sufficient "if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt." *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In reviewing a claim of insufficiency, we accept the State's evidence as true and draw all reasonable inferences in the State's favor. *Id.* at 265-66. Circumstantial and direct evidence are equally reliable. *Id.* at 266.

A person is guilty of second degree unlawful possession of a firearm if "the person owns, has in his or her possession, or has in his or her control any firearm" after being convicted of a felony offense. RCW 9.41.040(2)(a).

Possession for purposes of a criminal offense may be actual or constructive. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Actual possession occurs where the defendant has "physical custody of the item." *Id.* There must be more than a "passing control" or "momentary handling" to establish actual possession. *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). But the "duration of the handling" is "only one factor to be considered" when determining whether actual possession is established. *State v. Staley*, 123 Wn.2d 794, 801, 872 P.2d 502 (1994). Our focus is not on the length of the possession, but "on the quality and nature of that possession." *State v. Summers*, 107 Wn. App. 373, 386, 28 P.3d 780 (2001).

Constructive possession occurs where the defendant has "dominion and control" over the item, even though it is not in their physical custody. *State v. Cote*, 123 Wn. App. 546, 549, 96 P.3d 410 (2004). "Control need not be exclusive to establish possession, and more than one person can be in possession of the same item." *State v. Listoe*, 15 Wn. App. 2d 308, 326, 475 P.3d 534 (2020). To determine whether a person has dominion and control for purposes of a constructive possession analysis, we consider the totality of the circumstances and a variety of factors. *Id.* No single factor is dispositive. *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000).

We consider the defendant's physical proximity to the item and whether they "could readily convert the item[] to [their] actual possession." *Listoe*, 15 Wn. App. 2d at 326-27. Evidence that the defendant "was at one point in proximity to the contraband and touched it . . . is insufficient to establish dominion and control." *Cote*, 123 Wn. App. at 550; *see also State v. Spruell*, 57 Wn. App. 383, 388-89, 788 P.2d 21 (1990). Yet, a rational trier of fact could find dominion and control where a firearm "was within an arm's reach." *Turner*, 103 Wn. App. at 521-22; *see also State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). This court has also considered that "furtive hand movements" and driving "an uncommonly long distance before pulling over" may "raise an inference that [the defendant was] handling the contraband at that time, or possibly strategizing about where to hide it." *Listoe*, 15 Wn. App. 2d at 328. These facts may support a reasonable inference that the defendant "could convert dominion and control over the items in the vehicle into his actual possession." *Id.*

We also consider whether the person has dominion and control over the premises where the item is found. *Id.* at 327. For purposes of this analysis, a vehicle may be considered a "'premises.'" *Turner*, 103 Wn. App. at 521. "When a person has dominion and control over a

premises, it creates a rebuttable presumption that the person has dominion and control over items on the premises." *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010).

Being a passenger in a car does not, without more, establish dominion and control over the car or nearby contraband. *Cote*, 123 Wn. App. at 550. But ownership of the car is a factor that may be considered. *See, e.g.*, *State v. Chouinard*, 169 Wn. App. 895, 900, 282 P.3d 117 (2012) (reviewing cases where courts found sufficient evidence of dominion and control and "the defendant was either the owner of the premises or the driver/owner of the vehicle where contraband was found"); *Listoe*, 15 Wn. App. 2d at 327 ("Conversely, where the appellant was a passenger, rather than a driver, *and* the passenger did not own the vehicle, some courts have found that the appellant did not have dominion and control over the premises and its contents." (emphasis added)).

Here, Ropati was not detained with the firearm on his person, but the presence of Ropati's DNA on the slide, grip, and trigger of the firearm proves that he handled it at some point in time. The evidence also shows that after the officers activated their lights, Ropati "turned all the way around, reaching back as far as he could," with his "full arm going into the back seat," for "a longer period of time than what's normal for a traffic stop." 3 VRP at 394-95, 465. The firearm was found "right next to the access point" to the trunk from the back seat. *Id.* at 408. These facts suggest that the firearm "was within an arm's reach" for Ropati, *Turner*, 103 Wn. App. at 521-22, and they support a reasonable inference that Ropati could have retrieved the firearm from the trunk and "readily convert[ed]" it to his actual possession or custody, *Listoe*, 15 Wn. App. 2d at 326-27. Ropati's movements before the car came to a stop weigh heavily in favor of a finding of dominion and control over the firearm.

Further, although Ropati argues there was "no evidence that [he] owned or ever drove the Honda," Opening Br. of Appellant at 14, the State offered evidence of Ropati referring to the Honda as "my car," Ex. 6. Within the jail call recording, Ropati expressed that he viewed the car as his own, and he sought to make arrangements for somebody to pick it up after his arrest. Based on this evidence, a rational trier of fact could find that Ropati had dominion and control over the Honda, which creates a presumption that Ropati had dominion and control over the firearm in the Honda's trunk. Ropati has not presented evidence sufficient to rebut this presumption.[3]

A rational finder of fact could have also considered that Ropati referenced shooting a firearm during the jail call he made less than two hours after his arrest. This evidence supports a reasonable inference that Ropati could have accessed the firearm in the trunk and that he therefore had dominion and control over the firearm.

Considering the totality of the circumstances, and viewing the evidence in the light most favorable to the State, a rational trier of fact could conclude beyond a reasonable doubt that Ropati possessed the firearm. We conclude there was sufficient evidence to support Ropati's conviction for unlawful possession of a firearm.

## II. ADMISSION OF THE JAIL CALL

Ropati argues the trial court abused its discretion when it admitted the jail call recording of Ropati saying, "'F*** man, I should have blasted them.'" Opening Br. of Appellant at 15

---

[3] The State also attempts to rely on Deputy Gudaitis's testimony that the driver said the Honda "'belonged to [Ropati].'" Br. of Resp't at 18 (alteration original) (quoting 1 VRP at 61). The State's brief erroneously describes this as trial testimony, but the quoted language is from the CrR 3.6 hearing. This statement was not offered as evidence at trial, possibly because it is hearsay. "[O]n appeal, a court examines sufficiency based on all the evidence admitted at trial." *State v. Jackson*, 82 Wn. App. 594, 608, 918 P.2d 945 (1996). Thus, we do not rely on the driver's statement in our sufficiency analysis.

(quoting Ex. 6). He describes the recording as "irrelevant to the charges and substantially more prejudicial than probative." *Id.* We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Irrelevant evidence is inadmissible, and relevant evidence is generally admissible. ER 402.

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice." ER 403. A danger of unfair prejudice exists if "'evidence is likely to stimulate an emotional response rather than a rational decision.'" *State v. Beadle*, 173 Wn.2d 97, 120, 265 P.3d 863 (2011) (quoting *State v. Powell*, 126 Wn.2d 244, 264, 893 P.2d 615 (1995)).

In balancing the probative value of evidence against its possible prejudicial impact, the trial court may consider, among other factors, the importance of the fact for which the evidence is being offered in the context of the litigation and whether that fact is disputed. *City of Seattle v. Lange*, 18 Wn. App. 2d 139, 162, 491 P.3d 156 (2021). Trial courts have "considerable discretion" when conducting this balancing analysis. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). Accordingly, we review the trial court's decision for a "manifest abuse of discretion," meaning the trial court's use of discretion was "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* at 802 (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)).

Ropati's references to the Honda and to using a firearm tended to make the existence of facts of consequence—that Ropati owned the Honda and possessed the firearm—more probable. Thus, the evidence was relevant.

On one hand, because Ropati's full statement included an expletive, as well as a mention of violence toward law enforcement, there was a danger of unfair prejudice. Ropati correctly notes that hearing him "express a desire to shoot police officers, even in jest or out of simple frustration, would stimulate a strong, negative emotional response from an average juror." Opening Br. of Appellant at 17.

Yet, Ropati was a passenger in the Honda at the time of the stop, and he was not detained with the firearm on his person. Thus, Ropati's defense focused on challenging whether he possessed the firearm. Ownership of the car and possession of the firearm were critically important facts in the context of the litigation, and they were disputed. Therefore, this evidence had significant probative value. *See Lange*, 18 Wn. App. 2d at 162.

Considering the importance of evidence of possession in this case and the fact that the possession element was disputed, we hold the trial court did not abuse its broad discretion in admitting the jail call recording.

CONCLUSION

We hold the State presented sufficient evidence to support Ropati's conviction for unlawful possession of a firearm, and the trial court did not abuse its discretion in admitting the recording of Ropati's jail call. We affirm.

No. 54554-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, J._
Glasgow, J.

We concur:

_Lee, C.J._
Lee, C.J.

_Worswick, J._
Worswick, J.