# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59536-2-II |
| Respondent, | |
| v. | |
| JUNG JUNG, JR., | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, A.C.J. — Jung Jung, Jr. appeals from his conviction for unlawful possession of a firearm. Jung argues he received ineffective assistance of counsel because his counsel failed to adequately review discovery and, therefore, failed to adequately prepare for trial. Because Jung cannot show he was prejudiced by any deficient performance of counsel, we affirm.

## FACTS[1]

### I. BACKGROUND

In December 2023, Joseph Gossler reported that his white, 2001 sport utility vehicle had been stolen. On December 23, while on patrol, Officer Justin Yi saw a vehicle matching the description of the stolen vehicle parked on the side of the road. After running the license plates, Yi determined that it was reported stolen. Yi observed that Jung, who was in the driver's seat, and a female, who was in the passenger seat, were asleep in the vehicle.

---

[1] This factual account is taken predominantly from testimony elicited at trial.

Yi called for backup, and once officers arrived, they directed Jung to exit the vehicle and took him into custody. Jung had a red bandanna hanging out of his right rear pants pocket at the time of his arrest. Jung left the driver's door open, and officers saw a firearm wedged between the driver's seat and the center console with the handle facing up. Yi later testified that Jung initially denied possessing a firearm. However, after a brief pause, Jung responded "I don't know" when asked if he possessed a firearm. 1 Rep. of Proc. (RP) at 173.

The next day, Yi executed a search warrant on the vehicle. Officers discovered a red backpack in the backseat. Yi stated that inside the backpack was a red bandanna, a pair of men's underwear, firearm lubricant, and "firearm parts." 2 RP at 194. In the rear passenger side of the vehicle, officers discovered a purse or bag with "feminine products" and black eyelashes. 2 RP at 197. Yi also discovered a bullet in the chamber of the operational 9-millimeter firearm that was wedged between the driver's seat and the console.

The State charged Jung with unlawful possession of a firearm in the first degree and unlawful possession of a stolen vehicle.

II.    DISCOVERY

On the day of trial, Jung's counsel indicated he was unaware that there was a red bandanna discovered inside the red backpack depicted in an officer's bodycam footage. Regarding this issue, the following exchange took place:

> [STATE]: So there was a search warrant served on the car, and in the back of the car was a red backpack. It had some men's clothing in it, gun oil, and also a red bandanna. . . .
> The State intends to argue that the bag with the gun oil was Mr. Jung's; therefore, he's the one who possessed the firearm and not the passenger, because the bandanna is the exact same almost as what he was wearing on that day when he was in custody and taken in.
> . . . .
> [DEFENSE COUNSEL]: So, Judge, this is the first I'm hearing about it now. In the police reports, when they're describing things recovered from the bag,

2

red bandanna's not mentioned.  When you watch the video of this section in the car, I mean, it appears to me—and the car is a bit of a mess; right?  So it's a little hard to differentiate, but it appears to me as if—

        THE COURT: Was this clip provided to you in discovery?

        [DEFENSE COUNSEL]: Yeah.  I believe that's from the same clip.  There's just the one video of the person searching it.  But when you watch the clip, it appears to me as if it does not come from within the inside of the bag, but it is in the back, not in the inside of the bag.

1 RP at 103-04.  Defense counsel later agreed that the video showed the bandanna coming out of the red backpack.  Defense counsel again expressed concern regarding the bandanna in the backpack stating:

We don't do trial by ambush in Washington.  This is an incredibly significant fact.

        THE COURT: How is it ambush?

        [DEFENSE COUNSEL]: Because it was never—it's not referenced in any of the discovery.  It's never been mentioned until just this morning that this was of consequence.  The client had—

        THE COURT: It was in discovery to you; right?

        [DEFENSE COUNSEL]: In the video, we can see that he has a red bandanna.  I don't know anything about that bandanna, about the size, material.  These are things I could have attempted to inquire into if I had any reason to believe that was of consequence, if the State had in any way referred to it, if any of the officers in their reports had made reference to it in terms of establishing, making this connection between my client and this particular bag.

        The—you know, again, similarly, the bandanna that is just—to me it's a bandanna.  That's not unambiguous from the video, Judge.  There's some red thing.  There's some red thing that comes out of the bag.  It wasn't clear.  There's no reason I had to believe, and I had no way to divine what it might have been, nor was it practical for me in the voluminous, never-ending amounts of body-worn camera, Judge, to suggest that the mere fact that something appears in a corner, a clip of— in a moment of time is enough to put defense on notice is—is not reasonable.

1 RP at 142-43.  The trial court responded that the information in the video was properly discovered and available to defense counsel.  The court also stated that evidence of the red bandanna in the bag was relevant, probative, and not prejudicial to Jung.

3

III.     TRIAL, VERDICT, AND SENTENCING

At trial, officers testified consistent with the above factual account.  The trial court admitted the bodycam footage which showed the red bandanna being pulled from the red backpack when the vehicle was being searched.

During closing argument, to tie Jung to the firearm, the State argued the following regarding the backpack in the backseat, which contained firearm lubricant:

> There was men's underwear in that bag, so you can reasonably infer that it's not the female passenger.  And there's also that red bandanna or handkerchief in that bag, and remember that Mr. Jung, when he was arrested, he had a similar handkerchief in his back pocket.  These are all things you can reasonably infer from the evidence, that that bag, the State submits to you, belonged to the defendant, that bag with the gun oil.

2 RP at 293.  Jung stipulated that he had been previously convicted of a serious offense in Washington and could not possess a firearm.

The jury found Jung guilty of unlawful possession of a firearm in the first degree but could not reach a unanimous verdict on unlawful possession of a stolen vehicle.  Jung was sentenced to 67 months' total confinement.

Jung appeals.

ANALYSIS

Jung argues he received ineffective assistance of counsel because his counsel failed to properly review discovery and overlooked a key piece of evidence that the State used to connect Jung to the firearm.  Because Jung cannot show he was prejudiced by any deficient performance of counsel, we conclude he cannot show ineffective assistance of counsel.

I.     INEFFECTIVE ASSISTANCE OF COUNSEL

        A.     Legal principles

We review ineffective assistance of counsel claims de novo. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "'below an objective standard of reasonableness'" and (2) that the deficiency prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to satisfy either requirement "'defeats' the claim." *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024) (quoting *Strickland*, 466 U.S. at 700).

First, "[t]he defendant must overcome 'a strong presumption that counsel's performance was reasonable.'" *Bertrand*, 3 Wn.3d at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *Kyllo*, 166 Wn.2d at 863. A "defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). For example, a defendant can show that their attorney failed to conduct appropriate investigations to determine what defenses were available, failed to adequately prepare for trial, or failed to subpoena necessary witnesses. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004).

Second, prejudice requires showing that had counsel's performance not been deficient, "there is a reasonable probability . . . the result of the proceeding would have differed." *Estes*, 193 Wn. App.at 488. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Therefore, "[p]rejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Bertrand*, 3 Wn.3d at 129 (alterations in original) (quoting *Strickland*, 466 U.S. at 694).

Further, to prove unlawful possession of a firearm, the State must show that: (1) the person knowingly possessed a firearm, (2) after having been previously convicted of a serious offense. RCW 9.41.040(1)(a). Possession can be either actual or constructive but need not be exclusive. *State v. Turner*, 103 Wn. App. 515, 520, 13 P.3d 234 (2000); *State v. Embry*, 171 Wn. App. 714, 747, 287 P.3d 648 (2012). Considering the totality of the circumstances, "[a] jury can find a defendant constructively possessed a firearm if the defendant had dominion and control over it or over the premises where the firearm was found." *Turner*, 103 Wn. App. at 520-21. In this inquiry, a vehicle is considered a premises. *Id.* at 521. To determine if a defendant constructively possessed a firearm, close proximity alone is insufficient; however, "the ability to reduce an object to actual possession is an aspect of dominion and control." *Id.*

B.      Analysis

Here, even assuming without deciding that Jung could show counsel's performance was deficient, he cannot show prejudice. If counsel adequately reviewed discovery and knew of the bandanna in the backpack prior to trial, there is no reasonable probability the outcome of the trial would have differed. Without the evidence of the red bandanna being found in the backpack in

the backseat, the jury could still rely on the other evidence to conclude that Jung constructively possessed the firearm.

Critically, the loaded firearm, readily in view, was located between the driver's seat and the center console with the handle sticking up, right next to where Jung was sleeping. As such, Jung could easily reduce the firearm to his actual possession and, therefore, have dominion and control over it. Further, the red backpack, as opposed to the black bag with feminine products and black eyelashes, contained men's underwear, firearm lubricant, and firearm parts, also allowing the jury to infer that the firearm belonged to Jung, instead of the female passenger (though constructive possession need not be exclusive). This evidence, aside from the red bandanna in the backpack, was sufficient for the jury to conclude beyond a reasonable doubt that Jung possessed the firearm. There is no reasonable probability that the result of the proceeding would have differed even if, as Jung alleges, counsel had known of the red bandanna in the backpack prior to trial,[2] and our confidence in the outcome of the trial is not undermined. Because Jung cannot show he was prejudiced by any alleged deficient performance of counsel, his ineffective assistance of counsel claim fails.

CONCLUSION

Accordingly, we affirm.

---

[2] Jung also cannot show prejudice regarding his argument that counsel did not know the strength of the State's case and therefore could not properly advise him whether to proceed to trial. Jung would need to show that he would have taken a plea deal had counsel known of the bandanna and advised him the State's case was stronger than first thought, but nothing in the record suggests that is the case. Jung's argument fails.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered

_____
Veljacic, A.C.J.

We concur:

_____
Lee, J.

_____
Price, J.